In this suit the plaintiff, Daniel E. Sheridan, seeks judgment against the defendant, Sam F. LeQuire, in the sum of $846 with legal interest thereon from December 18, 1940. On an order of the district judge he has had attached the sum of $219.03 in the hands of Sam Y. Watson, clerk of court for the Parish of East Baton Rouge, which amount was deposited with the said clerk as security for the issuance of a writ of attachment issued in the suit entitled: "Sam F. LeQuire v. W. Delmer Edwards" bearing No. 16,479 of the docket of the said court, and also the sum of $174.94, the amount owed the present defendant by the said W. Delmer Edwards, which sum was in the hands of the present defendant himself. The claim herein sued on allegedly grew out of a verbal agreement entered into between the plaintiff and defendant on or about September 14, 1940, under which they went into a cattle raising venture, all as set out in the plaintiff's petition. From the allegations made, it appears that under the terms of the agreement, the defendant was to furnish all the necessary capital for their venture, to an amount not to exceed $10,000, and the plaintiff was to have the actual charge and supervision of raising and handling the cattle, furnishing his automobile and devoting all of his time and talents to that part of the work which he was to perform. Further it appears from the petition that they operated under this agreement until about November 21, 1940, when decided differences between them which finally resulted in a physical encounter about the end of December, 1940, severed their relations.
To better understand the plaintiff's own idea of what their agreement was, it may be proper to quote certain allegations taken from his petition. After setting out certain *Page 120 
preliminaries leading up to their meeting, it is alleged "that after several conferences on the subject * * * petitioner and the said defendant entered into a verbal agreement on or about September 14, 1940, under the terms of which it was mutually agreed and understood that for a period of not less than three (3) years the defendant would furnish the necessary capital to purchase cattle and defray all expenses to be incurred in the raising, purchasing, feeding, watering and otherwise handling of cattle up to the sum of ten thousand dollars ($10,000); that petitioner would furnish an automobile, devote all of his time and talent in supervising, raising, purchasing, pasturing, feeding, watering and otherwise handling and dealing in cattle, and all losses resulting from the business, if any, would be borne exclusively by the defendant, Sam F. LeQuire, and the profits, if any, were to be equally divided between petitioner and defendant, subject to a payment by petitioner to the defendant of five per cent (5%) interest on petitioner's one-half (1/2) of the profits." Plaintiff then alleges the fulfillment of his obligation in the agreement as follows: "That under this agreement petitioner devoted all of his time and the use of his automobile from September 15, 1940, and continuously to November 21, 1940, in the performance of all the duties encumbent upon petitioner, in the purchasing, pasturing, feeding, watering and otherwise handling of the cattle and business which the petitioner and the defendant engaged themselves." He then sets out his cause of action, as far as the present demand is concerned, in the following allegation: "That petitioner was driven off the property and forced out of the agreement by the defendant before sufficient time had elapsed under the three (3) year agreement to be able to determine whether any profit would be realized or loss incurred in the operation of the business engaged in and for the further reason that the period for which the contract was to run had not expired, petitioner shows that he is entitled to be paid by the defendant a reasonable and adequate amount for his time, his expenses and talent, the use of petitioner's own automobile and reimbursements of actual incidental expenses paid." He next itemizes his demand which consists of the time he devoted to carrying out his part of the agreement, that being reckoned by the day, and totalling the sum of $800, and his incidental traveling expenses in connection with the business amounting to the sum of $46.
In one of the articles of his petition the plaintiff alleges that on or about November 21, 1940, the defendant announced to him, that he, defendant, "and employees who performed labor for the partnership had observed the manner and method" under which the cattle were being taken care of and that it would not be necessary for him (plaintiff) to give his personal supervision and attention to the same as he had done up to that time. Notwithstanding this notice, or announcement, as he refers to it, it seems that plaintiff continued to perform his services for he alleges further, "that after November 21, 1940, to December 18, 1940, petitioner continued to exercise general supervision over the property belonging to the partnership."
The defendant's first appearance was to file various pleas including one of lis pendens, one of res adjudicata and also a plea of equitable estoppel. These, it is urged, were based on the suit No. 16,479 entitled "LeQuire v. Edwards" of the docket of the same court in which the present suit was instituted, and which has already been referred to. These pleas were all overruled and answer was then filed by defendant admitting for the most part the nature of the agreement as set out by plaintiff but denying his performance thereunder as alleged and further denying any liability claimed. The case was then tried on the merits and after taking of the testimony both in open court and by deposition, defendant filed an exception of no cause of action which was sustained by the trial judge. From the judgment sustaining the exception and rejecting the plaintiff's demand and dismissing his suit, he has taken and perfected this appeal.
In this court defendant's counsel have re-urged the pleas and defenses which were overruled in the district court but they seem to rely principally on the exception of no cause of action which was sustained. It is unnecessary to say any more regarding the pleas of lis pendens, res adjudicata and equitable estoppel than that we are of the opinion that they were properly overruled as the former suit on which they were based, was one between different parties and the cause of action was not at all the same as the one in the suit presently before the court. Moreover, *Page 121 
as we are satisfied that the exception of no cause of action was properly sustained, we prefer to dispose of the case on the issues therein raised.
The contention made under the exception is that a legal partnership grew out of the agreement which was entered into between the plaintiff and the defendant as set out in the pleadings, and as, under the well-settled jurisprudence in this State, a partner has no cause of action against his copartner for any specific sum of money until there has been a final settlement or dissolution of the partnership, it follows that the plaintiff could not recover on the demand presented by him in this suit. Dromgoole v. Gardner's Widow Heirs, 10 Mart. (O.S.) 433; Conrad v. Callery, 22 La.Ann. 428; Seelye v. Taylor, 32 La. Ann. 1115. As a legal proposition this is not disputed by counsel for plaintiff but he strenuously contends that the agreement did not result in the formation of a legal partnership, and that plaintiff's demand is one for damages for a breach of the contract between them. It becomes necessary therefore for us to determine what was the nature of the agreement.
Article 2801 of the Revised Civil Code defines partnership as "a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties." By Article 2809 it is provided that "property, credit, skill and industry being the sources from which the profits of a partnership may be drawn, each of the parties may furnish either or all of these, in such proportions as they may mutually agree," and Article 2805 makes it necessary that the partnership be created by the consent of the parties.
With these principles before us, let us revert now to the agreement between the plaintiff and the defendant, all as set out in the plaintiff's petition, and we find all the essential elements of a partnership as therein defined and laid down.
In the case of State ex rel. Waterman v. J.S. Waterman Co., Inc., 178 La. 340, 151 So. 422, 426, the court adopted the definition of the term "synallagmatic" as found in Bouv. Law Dict., Rawle's Third Revision, vol. 2 p. 3215, and in which that author states that a synallagmatic contract is "a contract by which each of the contracting parties binds himself to the other." That requirement certainly existed in the contract between the parties in this suit as the defendant, on his part, bound himself to the plaintiff to furnish the necessary capital for the cattle raising venture up to the sum of $10,000, and the plaintiff, for his part, bound himself to the defendant to furnish his time and his talents, as well as his automobile and incidental expenses, in attending to and handling the cattle. Further quoting from Bouv. Law Dict., Rawle's Third Revision, vol. 1, p. 571, the court, in the cited case, adopted the definition therein contained, of a commutative contract which is stated to be "one in which each of the contracting parties gives and receives an equivalent." This definition was further supplemented by that found in Article 1768 of the Revised Civil Code which declares that "commutative contracts are those in which what is done, given or promised by one party, is considered as equivalent to, or a consideration for what is done, given, or promised by the other." Taking into consideration that in the contract between the parties to this suit, the plaintiff was to furnish his talent, his skill and his industry and the defendant was to furnish the necessary capital, all of which were the sources from which the profits, if any, were to be drawn, as provided for under Art. 2809, R.C.C., and that the said profits, if any, were to be divided in a certain manner mutually agreed upon, it certainly would seem that here again the essential elements of the contract of partnership have all been supplied.
But counsel for plaintiff contends that notwithstanding the inclusion of all these requirements in the contract between them there was a stipulation which made it void as a partnership because under Article 2814 of the Code, if one of the contracting parties is to participate in the profits but is not to contribute to the losses, the contract is void both as regards the parties and third persons. This same contention with regard to a similar stipulation was raised in the case of Consolidated Bank v. State, 5 La. Ann. 44, and in answering it the court stated in part that the argument rested "on too broad an assumption, if it takes for granted that, under the spirit and true meaning of the code, a contract between individuals, that one partner should share the profits and be exempt from the losses, would be void under *Page 122 
all circumstances. Equality is the spirit of the rule: and we are not prepared to say that such a stipulation would be void, asbetween the parties, where the exemption was based upon a fair and just equivalent given to his associate, by the partner in whose favor it was stipulated." (Italics ours.)
Under the very allegations of his petition, plaintiff makes it plain, as we view it, that the only loss in which he was not to share was that of the funds or money that was put up by the defendant. Further, it strikes us that the very nature of his demand is for losses sustained by him from what he was to put in or furnish under the terms of the agreement, that is the loss of his time, skill and industry, and the expenses and use of his automobile. Certainly as regarded the other party to the agreement, the stipulation that all losses resulting from the business, if any, would be borne exclusively by him, referred to those losses only of the money that was put up by the latter, the defendant herein.
Our courts have been called upon on numerous occasions to construe contracts under which the issue that is here involved arose, and in no case perhaps has the matter been more fully discussed and thoroughly considered than in that of Chaffraix 
Agar v. John B. Lafitte Co., 30 La. Ann. 631. After a most illuminating discussion of the subject from the standpoint of both the majority and the minority opinions therein handed down, the decision seems to have resulted in the following, somewhat simple proposition, as announced in the majority opinion: "The true, final, satisfactory, conclusive test is in the answer to the question: What was the real meaning and intention of the parties, as expressed in their contract, whether verbal or written? If they intended to create a partnership, they will be treated as partners inter sese and with respect to third persons: If they did not intend to create that relation, but merely to divide the profits, or to share profits and losses, in a speculation or adventure, they will not be parties inter sese, nor will they be liable as such." Looking for the real meaning and intention of the parties to the contract in this case, where can it better be found than in the petition of the plaintiff, who seeks to recover under allegations made and sworn to by himself, in which besides setting out an agreement which contains all the essential elements that constitute a partnership, he in two instances denominated the contract by that very term himself. Bearing in mind that in this case we are concerned with the intentions of the parties with regard to each other and not, as is usually a more perplexing question, with their intentions as regard third persons, we cannot reach any other conclusion but that with regard to themselves those intentions were clearly to form a legal partnership and that is what their contract resulted in.
As both parties have called attention to it we deem it proper that we should make some reference to the case of Amacker v. Kent, 144 La. 543, 80 So. 717, in which the court had under consideration the same issue that is here presented. The suit was one for a specific amount for damages alleged to have arisen out of a violation of the contract. The parties had agreed to go into a cattle buying and selling venture based very much on the same terms and conditions as those agreed to by the parties in the present case. Following the rule that it had to be governed by what was found to be the intention of the parties in making their contract, the court, after reviewing the facts that were presented, came to the conclusion that there was no partnership agreement between them and in that respect, of course, the decision is relied on by counsel for plaintiff herein.
There were, in our opinion, a few features in the agreement which may be said to distinguish it from the one in this case. We refer for instance to the silence of the parties upon the subject of a partnership relation and of any liability on the part of one of them for losses to be incurred; the form in which the account was carried on their books merely as the "cattle account" and the manner in which the funds were drawn on the party furnishing them by the other, as an agent, all of which are mentioned by the court and seemed to have satisfied it that the contract did not result in one of partnership.
Notwithstanding its ruling on this point, the court did hold however that under the contract, whatever was its nature, plaintiff's suit was not well founded in view of the fact that there had not yet been a settlement of the transaction between them. In this respect, counsel for the defendant rely upon the decision in the event it should be held that the agreement involved in this case did not constitute a partnership between the parties. In this, of course, they would *Page 123 
be correct if we were deciding otherwise than we are by affirming the judgment of the lower court on the ground that under the allegations of plaintiff's petition a partnership is shown to have existed and he has no cause of action on the demand he has presented against his partner for a specific amount until there has been a final settlement and liquidation of the partnership accounts and affairs.
Judgment affirmed.