**COAST v. HUNT OIL CO. et al.**

Civ. No. 3010.

United States District Court
W. D. Louisiana, Shreveport Division.

Feb. 16, 1951.

Supplemental Opinion March 1, 1951.

Tucker, Bronson & Martin, Shreveport, La., for plaintiff.

Sidney Latham, Dallas, Tex., Riley Fell, Shreveport, La., Ralph B. Shank, Dallas, Tex., David T. Searls, J. D. Head and Vinson, Elkins & Weems, all of Houston, Tex., for Hunt Oil Co.

Leon O'Quin and Arthur O'Quin, and Blanchard, Walker, Goldstein & O'Quin, all of Shreveport, La., for Ohio Oil Co.

DAWKINS, Chief Judge.

Plaintiff, a citizen of Louisiana, alleges that "this action arises under the anti-trust laws of the United States * * * and jurisdiction exists by virtue of an Act of Congress of October 15, 1914, c. 323, Section 4, 38 Statutes 731 (15 U.S.C., Section 15 [15 U.S.C.A. § 15])"; that defendants are corporations under the laws of Delaware and Ohio; that plaintiff, since 1943, "has been engaged in the business of operating" an oil refinery in the Cotton Valley Field of Webster Parish, Louisiana; that he "in his own right owns an undivided forty-nine (49%) per cent interest in the refinery and it is operated under the name of Coast Oil Company * * *," which entitles him "to receive forty-nine (49%) per cent of the profits from his operations of it."

The complaint then proceeds to describe the conditions in the said Cotton Valley Oil Field of Webster Parish, Louisiana, including an agreement under which the owners of a large part of the production undertook to recycle or re-introduce back into the sand or rock gas withdrawn to aid recovery of greater quantities of the crude oil and other hydro-carbons,. which was permitted and required by the Conservation Department of the State. The bill then charges in some detail that the defendants and others took advantage of this situation to monopolize and control all production, refining and other operations up to and including the final marketing and sale thereof to consumers.

For the purposes of the motions now to be considered, it is not necessary to go further at this time into the details of the allegations as to the manner and method by which this monopoly and alleged illegal combination was carried out and maintained with the consequent injury to complainant which he alleges.

The complaint further sets forth in detail the extent of his alleged damages and prays for treble the amount under the anti-trust laws of the United States.

Defendants obtained an extension of time for pleading and within the delay have filed separate motions to dismiss the complaint, to strike certain allegations therefrom, for a more definite statement, and further enlargement of time for answer if the said motions are denied.

All motions were argued and submitted on briefs to be filed within fixed delays; but before they had expired, plaintiff filed an amended bill, stating as to some allegations he was doing so "as a matter of right," and as to others, "by leave of court." On the 20th of November, proposed amendments were also argued and submitted on briefs, which have now been filed.

The amendments claimed as a matter of right allege, that "Justin R. Querbes, a resident of Shreveport, and a citizen of Louisiana, owns an undivided fifty-one (51%) per cent interest in the refinery * * *," from which he "receives fifty-one (51%) per cent of the profits from the operation of it"; that the "Coast Oil Company * * * is a commercial partnership, organized under the laws of Louisiana, domiciled in the City of Shreveport,. composed of plaintiff * * * and Justin R. Querbes," and "owned" in the propor-

tions stated. The complaint then sets forth at some length the terms, conditions and provisions of said partnership agreement and that plaintiff acquired his said interest in consideration of his obligation to manage and operate the said refinery. The amendments for which authority was sought of the court are quoted as follows:

"26. In the first alternative this claim is brought by Coast Oil Company for Jack Coast and for his use and benefit.

"27. In the second alternative this claim is brought by Coast Oil Company for Jack Coast and for his use and benefit and for the purpose of this alternative claim, Justin R. Querbes is made a party defendant (except, however, that the demand for judgment for damages is not made against him).

"28. In the third alternative this claim is brought by Coast Oil Company, by Jack Coast, managing partner, and for the purposes of this alternative claim the amount of damages asserted is 100% of the damages caused in the operation of the refinery as set forth in paragraph 21 of the complaint, or $2,784,803.19, and the judgment demanded is for three-fold that amount or $8,354,409.57, plus a reasonable attorney's fee.

"29. In the fourth alternative this claim is brought by Coast Oil Company, appearing through Jack Coast and Justin R. Querbes, and for this purpose making Justin R. Querbes a party defendant (except, however, that the demand for judgment for damages is not made against him); and for the purposes of this alternative claim the amount of damages asserted is 100% of the damages caused in the operation of the refinery as set forth in paragraph 21 of the complaint, or $2,784,803.19, and the judgment demanded is for threefold that amount or $8,354,409.57, plus a reasonable attorney's fee.

"30. In the fifth alternative it is alleged that Justin R. Querbes should be made a party defendant (except, however, that the demand for judgment for damages is not made against him) for the purposes of the claim asserted by plaintiff Jack Coast in his own right against Hunt Oil Company and The Ohio Oil Company.

"31. In the sixth alternative this claim is brought by Jack Coast and Justin R. Querbes, who for the purposes of this alternative claim is made a party defendant (except, however, that the demand for judgment for damages is not made against him), and for the purposes of this alternative claim the amount of damages asserted is 100% of the damages caused in the operation of the refinery as set forth in paragraph 21 of the complaint, or $2,784,803.19, and the judgment demanded is for threefold that amount or $8,354,409.57, in the proportions of 49% to Jack Coast and 51% to Justin R. Querbes, plus a reasonable attorney's fee."

The alternative prayers are appropriate to the pleadings.

Defendant, Ohio Oil Company, on November 20, moved for the production of the agreement of partnership; and on December 5, it was produced and filed by plaintiff.

The principal questions presented, and which seem controlling in disposing of the motions to dismiss, are:

1) Did the complainant have a standing to bring the original complaint in his own name?

2) If not, do any one or all of the proposed amendments, made alternatively, disclose a right of action as to which relief can be granted?

Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides: "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against

it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States is governed by Title 28 U.S.C., §§ 754 and 959(a)."

The Louisiana Civil Code defines a partnership as follows: "Art. 2801. Partnership is a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties."

A commercial partnership, which the amended complaint admits this to be, is described as follows:

"Art. 2825. Commercial partnerships are such as are formed:

"1. For the purchase of any personal property and the sale thereof, either in the same state or changed by manufacture.

"2. For buying or selling any personal property whatever, as factors or brokers.

"3. For carrying personal property or passengers for hire, in ships, vessels or in any other vehicle of transportation."

The State Code of Practice provides: "2. Partnership. In matters relative to partnership, as long as the partnership continues, in all suits concerning it the parties must be cited to appear before the tribunal of the place where it is established, or if there are several establishments, before that of the place where the obligation was entered into." (Article 165, second paragraph)

In the early case of Smith v. McMicken, 3 La.Ann. 319, 322, the Louisiana Supreme Court declared: "The partnership, once formed and put into action, becomes, in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person, which has its peculiar rights and attributes. * * * Hence, therefore, the partners are not the owners of the partnership property. The ideal being thus recognized by a fiction of law, is the owner; it has a right to control and administer the property, to enable it to fulfill its legal duties and obligations;

and the respective parties, who associated themselves for the purpose of participating in the profits which may accrue, are not the owners of the property itself, but of the residuum which may be left from the entire partnership property, after the obligations of the partnership are discharged."

This case became a landmark in the state jurisprudence, and was used by the late Chief Justice Monroe in his lectures on the law of partnership in the Tulane Law School more than forty years ago to emphasize the point that a partnership is a legal entity, separate and distinct from the persons who compose it, with its own rights, obligations and causes of action. It has also been cited with approval in many subsequent cases.

In the case of Wolf et al. v. New Orleans Tailor-Made Pants Co., 52 La.Ann. 1357, 27 So. 893, 896, decided in 1900, a suit had been instituted in the names of the individual members of a partnership, alleging that they were conducting a commercial business in the city of New Orleans under the firm name of B. J. Wolf and Sons. The demand was against a corporation, its officers, agents and employees, engaged in the same type of business, in which it was alleged that they, the defendants, had unlawfully induced an employee of plaintiffs' said firm, commonly called a "drummer," or travelling salesman, to abandon and violate his contract of employment, and to accept similar employment with the defendants, thus making the action one in tort. Defendants filed numerous exceptions, only one of which was considered and sustained both by the trial court and the Supreme Court, to wit: "That said petition shows no cause of action." The latter court, through the then Chief Justice Nichols, said:

"We understand defendants' objection to have been that the pleadings disclose a wrong done to a partnership, while the parties seeking redress for it are the individual partners, and not the partnership itself. Their contention is that, so long as a commercial partnership is in existence, suits in which it is concerned must be brought in the name of the partnership;

giving its domicile, and also the names and residence of all the partners. This position is based upon the proposition announced in Smith v. McMicken, 3 La.Ann. 322; Pittman v. Robicheau, 14 La.Ann. 108, and Succession of Pilcher, 39 La.Ann. 365, 1 So. 929, that 'a partnership once formed and put into action becomes, in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person, which has its peculiar rights and attributes. Une personne fictive et morale, séparee des associés. 'Fictoe cujusdam personoe vicem obtinet.' See the authorities cited in Troplong, Partn. 368 et seq. Hence, therefore, the partners are not the owners of the partnership property. The ideal being thus recognized by a fiction of law is the owner. It has a right to control and administer the property, to enable it to fulfill its legal duties and obligations; and the respective parties who associated themselves for the purposes of participating in the profits are not the owners of the property itself, but of the residuum which may be left from the entire partnership property after the obligations are discharged.'

"It is urged that the petition in this case is not that of the partnership, but of the individual partners, and that the reference made by the parties to themselves as 'conducting a commercial business in the city of New Orleans under the firm name of B. J. Wolf & Sons' was mere 'words of description.' Defendants assimilate the suit to one brought in which the plaintiffs should have described themselves as stockholders, conducting an insurance business, in a corporation doing business in the name of the United States Insurance Company, or any other designated company. The Code of Practice, under neither the heading of 'What Persons are Entitled to Bring Actions' (article 102 et seq.), nor of 'Petition and Citation' (article 169), describes in what language petitions brought on behalf of existing partnerships should be framed. Article 172 simply states generally that a petition must mention 'the name, surname, and place of residence of the plaintiff.' Article 165, referring to the courts before which actions are to be brought, declares: 'In matters relative to partnership, as long as the partnership continues, in all suits concerning it, the parties must be cited to appear before the tribunal of the place where it is established, or if there are several establishments, before that of the place where the obligation was entered into.' Article 198, referring to the mode of service of a petition and citation, declares that the service must be made 'in suits against any commercial association, trading under a title or as a firm, on any of the partners in person or at their store or counting house by delivery to their clerk or agent.' Article 446 of the Civil Code declares that 'corporations unauthorized by law or by an act of the legislature enjoy no public character and cannot appear in a court of justice, but in the individual name of all the members who compose it, and not as a political body, although these corporations may acquire and possess estates and have common interests as well as other private societies.' Defendants admit that the petition would bring a partnership organized under the common law into court in a common-law state, but they deny that it does so in a state where the civil law prevails. The only decision brought to our attention by defendants upon this subject, or which we ourselves have found, is that of Key v. Box, 14 La.Ann. 497, which is not directly in point. In that suit Peyton A. Key brought suit against John Box. Defendant did not contest the correctness of plaintiff's demand, but contended that it was extinguished by compensation to the amount of a claim which he set up against the firm of Peter Tellon & Co., of which he alleged the plaintiff to be a partner. Then followed a reconventional demand for the surplus of this claim. This court said that it was well settled that compensation did not take place between partnership and individual debts, under the operation of articles 2203 and 2204 of the Civil Code, so that John Box could not plead as an offset to the debt which he owed individually his claim against the firm of P. Tellon & Co., although the plaintiff was liable solidarily for all the debts due by the firm. The court, in arguing, said: 'The rule of law is that during the existence of the partner-

ship the suit must be brought against the firm, and not against the individual partners. Code Prac. art. 165; David v. Eloi, 4 La. 107; Lambeth v. Vawter, 6 Rob., La., 127. In Crozier v. Hodge, 3 La. 359, this court, after stating that the surviving partner of a commercial partnership had not the right, as such, to sue for or receive the debts due to the firm, and that all the parties composing it must join in the action, said that "it was not the case of one creditor in solido, who had the right to receive the whole of the debt, and who perhaps might sue for it; that the obligation was made to a commercial firm, and the parties composing it must join in the action, for the debt was due to the partnership collectively, and not to one or others of the partners as creditors in solido." ' There is no question that debts due to the individual partners of a commercial partnership, and suits brought by and judgments obtained by them, carry with them legal results and rights and obligations different from debts due to and suits brought by and judgments obtained by the partnership to which they belonged. Civ.Code, art. 2823. Even though a judgment rendered in a suit brought in the name of the individual members of a commercial partnership might be shown, from the pleadings and evidence, to have been really a judgment rendered upon a partnership cause of action, and be made to inure to the benefit of the partnership, and even though any attempt to utilize it in favor of creditors of the individual partners might be successfully resisted, still it would be a better and more correct practice to so frame the pleadings as to do away with the necessity of any investigations of that character. Plaintiffs' pleadings show affirmatively that they were associated together, conducting a commercial business under a firm name. Resulting from that fact, followed the creation of a commercial partnership with a firm name. It was an entity, for the purpose of rights and obligations, of suits and of judgments for and against it, differing from the individuals creating and composing it. Suits in its favor should be brought as a partnership, in the firm name, and as appearing through and represented by all of the partners com-

posing the partnership; their full names and residence being set out in the petition. Plaintiffs recite the fact that they were conducting a commercial business under the firm name of B. J. Wolf & Co., but they do not declare that in appearing in the suit they do so in their capacities as partners of the partnership, and as collectively representing and bringing the partnership into court. It has been held that a succession is not properly brought into court as plaintiff through a petition in which the petitioner describes himself as being the administrator of the succession, but does not declare that in appearing therein he does so as its administrator, and as representing it. We regret having to dismiss a suit brought on behalf of a partnership in a manner which has been so often acquiesced in, but, as we believe the exception to be well taken in this state, we are forced to sustain it. This view of matters leaves the suit without a proper plaintiff, and it would be inconsistent to proceed to the decision of other questions involved. It may not be amiss, however, in view of the possibility of another action, to say that it has been held that where a party has actually suffered a legal wrong, and makes a proper statement of the facts of the case, a mistake as to the precise relief to which he might be entitled would not necessarily make the demand demurrable. Sundback v. Gilbert [8] S.D. [359], 66 N. W. 941. Nor would an error made by a party as to the measure of damages applicable to a particular state of facts carry with it the loss of the right to maintain an action upon that state of facts. Merchants & Miners' Nat. Bank v. Barnes [18] Mont. [335], 45 P. 218, [47 L.R.A. 737]. Whether plaintiffs' petition discloses, or not, a cause of action, or whether they had made any mistake or not, are matters we do not undertake to now pass upon. For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed."

■ There appears to have been no deviation from the holding of this case as to the requirement that suits to enforce partnership rights must be brought in the firm

name through or by all of the partners who compose it. See, also, Bankston Bros. v. Morrison, 190 So. 195, Court of Appeals, First Circuit; W. & W. Oil Co. v. American Supply Co., 8 So.2d 384, Court of Appeals, Second Circuit.

See, also, Volume 47 of Corpus Juris, pages 947 et seq., verbo *Partnership*.

No case involving the rights of individual partners to sue on behalf of the partnership for damage under the federal anti-trust statute has been found, but there are numbers wherein minority stockholders in a corporation have attempted to do so, by alleging the failure and refusal by the proper officers thereof to bring the action. One of the early cases (1913) was that of Corey v. Independent Ice Co. et al., D.C., 207 F. 459, by the District Court of Massachusetts. Apparently, notwithstanding the allegations of the complaint, counsel for the plaintiff at the hearing on the exception of no right of action conceded that the demand for damages to the corporation, and the consequent impairment of the value of their stock, could not be maintained in their individual names under the federal anti-trust laws, but insisted the case involved construction of a federal statute, which gave the court jurisdiction to determine it in equity, on the prayer for an injunction. However, it was held that the Government alone could demand an injunction under the statute.

### Motion to Amend.

In substance, the proposed amendments alternatively alleged as follows:

1) That "this claim is brought by Coast Oil Company for Jack Coast and for his use and benefit";

2) Using substantially the same beginning language, with the addition that "for the purpose of this alternative claim, Justin R. Querbes (the other partner who has refused to join as plaintiff) is made a party defendant" (without claiming any damages against him);

3) Coast Oil Company by Jack Coast, managing partner;

4) Coast Oil Company, appearing "through Jack Coast and Justin R. Querbes, and for this purpose making Justin R. Querbes a party defendant * * *";

5) That Querbes "should be made a party defendant * * * for the purpose of the claim asserted by Jack Coast in his own right * * *"; and

6) "* * * This claim is brought by Jack Coast and Justin R. Querbes, who for the purpose of this alternative claim is made a party defendant * * *."

All alternative demands are for the entire amount claimed in the original complaint "in the proportions of 49% to Jack Coast and 51% to Justin R. Querbes, plus a reasonable attorney's fee."

1. Wolf v. New Orleans Tailor-Made Pants Co., supra, held that a suit by a partnership under the Louisiana law must be brought in its own name through all the partners. If, as alleged, Querbes has refused to join in the suit, use of the firm name as a plaintiff, without his concurrence, appears to be unauthorized, and therefore the requirements of the state law have not been met.

2. Joining Querbes as a hostile defendant would deprive this court of jurisdiction, since according to the allegations both he and plaintiff are citizens of Louisiana.

3. It is believed that the addition of the words "managing partner" adds nothing to the cause of action, which complainant attempts to assert merely as a partner.

4. This alternative pleading alleges that the partnership "appears through Jack Coast and Justin R. Querbes, and for this purpose making * * * Querbes a party defendant * * *." But no authority has been found to support the idea that he can be compelled to thus appear for the firm against his will. Laying aside the point that, ordinarily, every one has the right to sue or not to sue, in his discretion, Querbes would have to be arraigned on the side of the controversy with the other defendants, rather than that of Coast and the partnership, with the result above stated as to alternative No. 1, that this court would be without jurisdiction between the two partners, both citizens of this state.

5. What has just been said as to the alternative plea No. 4, applies equally to No. 5.

6. Here, again, no difference, in principle, can be seen between this alternative amendment and No. 4.

At the argument of the exceptions and motions which the defendants filed to the original complaint, the court, as it often does, indulging in what it sometimes calls "thinking out loud," propounded some questions and made some comments in connection with the allegations made by Coast the then sole plaintiff. The Court remarked that, if the situation here was as bad as he alleged, then it seemed there should be some remedy, where the other partner, owning more than 50% refused to join in the suit for the firm, thereby making it impossible for the plaintiff to have redress as to his interest. The proposed amendments were thereafter submitted. However, after full consideration and careful research, as well as an examination of the authorities cited, the court has been unable to find any authority to support the several types of demands expressed in these six alternative claims. As to whether the plaintiff could put himself in a position to sue alone for his own interest by provoking a liquidation of the partnership, as his counsel suggested at the argument would be the only remaining remedy, it is not felt that any view should be expressed at this time. The decision as to whether it would be more profitable to plaintiff to continue the partnership or to provoke the liquidation is one that plaintiff and his counsel will have to make. In McFarland v. Connell, 22 La.Ann. 481, involving a claim for damages arising from the alleged tortious acts of the defendant, the State Supreme Court intimated that this was the only way in which it could be done.

It quite often happens that the majority stockholders, officers and directors of corporations do things which are distasteful to the minority, but so long as no wrong, fraud or other illegal act is committed with respect to the personal interest of the complaining minority, it is merely the exercise of a discretion of which the minority cannot complain. In such a situation the holder of that interest voluntarily has placed himself in that position. He is bound to know that someone has to make decisions for the firm, and in the absence of express agreement otherwise, the majority enjoys this power.

Complainant has cited and argued at length the Rules of Civil Procedure dealing with amendments, including the right to make one, who refuses to become a plaintiff, a party defendant, as provided in Rule 19(a). However, it seems clear that this rule presupposes that the complainant has a standing and cause of action *in his own right and name,* for the determination of which such persons are necessary or indispensable parties. As indicated above, the law applicable to this case does not give plaintiff any such standing or cause of action in his own behalf; hence there is nothing which this court could lawfully adjudicate between him and such other persons, whether plaintiffs or defendants.

Plaintiff has also cited other cases, such as Roseland v. Phister Mfg. Co., 7 Cir., 125 F.2d 417, 139 A.L.R. 1013, and McWhirter v. Monroe Calculating Machine Co., Inc., D.C., 76 F.Supp. 456, in support of his contention that by the fact of his being managing partner of the Coast Oil Company, he has a separate interest or business entitling him to bring this suit in his own name. However, those are cases where the plaintiffs operated as agents or salesmen on a commission basis, whose earnings therefrom were their own, constituted their livelihood and were directly affected by the illegal acts of the defendants. Here, all of plaintiff's efforts and activities, whether as manager or otherwise, were for the partnership, and any profits or income arising therefrom were the property of the partnership, while complainant's interest herein is residuary and could be realized only after the payment of expenses and debts of the firm. See Gerli v. Silk Ass'n of America, D.C., 36 F.2d 959, and authorities cited therein.

It is the conclusion of this court that the amendments would avail plaintiff nothing and that the motion to dismiss for failure

to state a cause of action or facts upon which relief can be granted should be sustained.

Supplemental Opinion.

 On page 10 of the opinion handed down in this case on the 16th of February, 1951, in paragraph numbered 2 [96 F. Supp. 59], it is stated that the joining of Querbes as a party defendant would deprive this court of jurisdiction, since both he and the plaintiff are citizens of the state of Louisiana. Generally speaking, of course, where the action is for the enforcement of rights arising under or created by a federal statute such as the Anti-Trust Act, the court has jurisdiction regardless of the citizenship of the parties; and all incidental and ancillary questions, even though they involve a state law, can and should be disposed of, if otherwise the case is brought by one having a right or standing to do so. See Cyclopedia of Federal Procedure, Volume 1, Chapter 2, §§ 170 and 263; and United Fuel Gas Co. v. Railroad Commission, 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390. Here, however, it seems clear, from what has been said as to the applicable law, that plaintiff has no such standing. His making Querbes a party is for the purpose of having the court adjudicate that the latter should join in the demand for damages to the partnership, notwithstanding his refusal to do so, and to that extent it is solely an issue between the two partners, which he seeks to have the court decide as a condition precedent to the maintenance of this suit. Since up to this point, the complaint discloses no right of action against the other defendants, plaintiff adopts this means for providing a proper form of procedure. The other defendants have no interest in this controversy between the two partners, and to that extent it would be between two citizens of this state alone, and in which the court would be without jurisdiction. It appears to be settled that, with certain exceptions not necessary to mention here, one partner cannot sue the other with respect to partnership transactions so long as the partnership exists, either in contract or in tort, 168 A.L.R. 1088–1188; Sheridan v. Le-Quire, La.App., 15 So.2d 118; West v. Ray, 210 La. 25, 26 So.2d 221, and this court would have no power to compel Querbes to join in the present suit.