Hon. WILLIAM H. DE WITT, } Associate Justices.
Hon. WILLIAM H. HUNT,

---

MERCHANTS' & MINERS' NATIONAL BANK, APPEL-
LANT, *v.* BARNES, RESPONDENT.

[Submitted May 20, 1896.  Decided June 8, 1896.]

EQUITABLE ASSIGNMENT OF CLAIM—*Order—Acceptance.*—Where one to whom money
is to become due upon the performance of a contract gives a creditor an order on the
debtor for the money, to be paid when due, this is an equitable assignment of prop-
erty to be acquired in the future. creating in the creditor an interest in the fund which
equity will enforce, though the debtor did not accept the order or assent to the trans-
fer.

GARNISHMENT—*Payment of garnishee—Liability of officer.*—An officer, who, upon the
instructions of a judgment creditor, garnishees a debt due to the judgment debtor
and applies on the execution money received from the garnishee, who paid it over
without objection. is not liable therefor in an action for money had and received to
another creditor to whom the judgment debtor had given an order on the garnishee

for the money prior to the garnishment, though he is notified by the latter of his claim to the debt, both before and after receiving the money from the garnishee.

SAME—*Transfer of claim—Knowledge of garnishee.*—The admission by a garnishee of an indebtedness to a judgment debtor and payment of the money to the officer levying the writ, does not relieve him from liability to one to whom the judgment debtor had transferred his claim prior to the garnishment and with the knowledge of the garnishee.

*Appeal from Third Judicial District, Deer Lodge County.*

ACTION for money had and received. The cause was tried before BRANTLY, J. Affirmed.

Statement of the case by the justice delivering the opinion.

Action for money had and received. The plaintiff bank alleges that the defendant and respondent, Barnes, received from the Granite Mountain Mining Company the sum of $226.18, to and for the use of the plaintiff bank. The case was tried to the court without a jury. The evidence showed the following facts :

About January 31, 1894, one A. Tyler made a contract for hauling wood with the Granite Mountain Mining Company, for which the company was to pay him (Tyler) on the completion of the contract. About March 15, 1894, the contract was completed. About the time the contract was executed, Tyler borrowed $300 from the plaintiff bank. To secure the payment of this sum, Tyler gave the following order on the mining company :

"Philipsburg, Mont., Jan. 31, 1894. To James H. Henley, Superintendent Granite Mountain Mining Co., Granite, Montana.—Dear Sir : Please deliver to Merchants' & Miners' National Bank the check due me, March 15th, for hauling wood from Cleveland shaft to Bimetallic hoist. [Signed]   A. Tyler."

This order was immediately presented by the plaintiff bank to the mining company for acceptance, but it was not accepted at that time, as there was no money yet due to Tyler; but it was agreed that, if Tyler would indorse his check to be given him in payment of the contract for hauling wood by the mining company on completion of this contract, the mining com-

pany would deliver the indorsed check to the bank. Afterwards, about March 1st, the amount due to Tyler was garnished in the hands of the mining company, in a suit brought by Merrell & Co. in a justice's court of Granite county; and on March 17th the sum of $226.18, the amount of money sued for by plaintiff in this action, was paid to the defendant, Barnes, the constable who served the papers on an execution from the justice's court in the aforesaid suit of Merrell & Co. against Tyler. Before the mining company paid the money to Barnes, the constable, the plaintiff bank demanded payment of the same, to-wit, from the mining company, and also notified Barnes of its claim to said money. A subsequent demand was likewise made by plaintiff bank for the money, upon Barnes, after its receipt by him from the mining company. The money was applied by Barnes, the said constable, in satisfaction of of the judgment against Tyler in favor of Merrell & Co.

At the conclusion of plaintiff's testimony the defendant moved for a non-suit, but the court concluded to hear the evidence of the defense, and reserved its decision on the motion. Subsequently judgment was rendered for the defendant upon the questions of law involved. A motion for a new trial was made and overruled. The plaintiff appeals from the judgment and the order overruling the motion for a new trial.

*H. R. Whitehill*, for Appellant.

*Durfee & Brown*, for Respondent.

Hunt, J.—An action of assumpsit, for money had and received, is a remedy equitable in its nature, existing in favor of one person against another, when that other person has received money, either from plaintiff or a third person, under such circumstances that, in equity and good conscience, he ought not to retain the same, and which *ex æquo et bono*, belongs to plaintiff. (*Buel* v. *Boughton*, 2 Denio 91; *McFadden* v. *Wilson*, 96 Ind. 253; *Lockwood* v. *Kelsea*, 41 N. H. 185; *Laport* v. *Bacon*, 48 Vt. 176.)

The old doctrine of the common law, that no action of contract can be maintained unless there is privity of contract between plaintiff and defendant, no longer generally prevails. Thus under the common law, as illustrated by the facts of this case, the mining company being indebted to Tyler, and Tyler having given an order to the bank for moneys due on such debt to this plaintiff bank, the bank could maintain no common law action against the mining company to recover the amount, unless the mining company had assented to the appropriation, and promised, either expressly or by implication, to pay the money; and in such case the action would not be based upon any property or interest in the fund acquired by the bank through the order, but upon the mining company's promise to pay.

But the equitable rule is different. By it an interest in the fund is recognized, and this interest arises through the order, which operates as an assignment, and generally permits such interest to be enforced by suit, even where the debtor upon whom the order has been drawn has not assented to the transfer. In this case, therefore, if the mining company, as a debtor of Tyler, held money which it was bound to pay to Tyler, and if Tyler agreed with the plaintiff bank that the money should be paid to the bank, and gave to the bank an order upon the mining company for the money, this order creates an equitable interest or property in the fund, in favor of the assignee, the plaintiff bank; and it was not necessary that the mining company should consent or promise to hold the money for, or pay it to, the plaintiff bank. This doctrine is applied in cases where the debt actually exists, or where it exists *in futuro.* As stated by Pomeroy (Pom. Eq. Jur., § 1283) : " The equitable doctrine with respect to the assignment of property to be acquired in future is extended to this species of equitable transfer. The fund need not be actually in being ; if it exists potentially,—that is, if it will, in due course of things, arise from a contract or arrangement already made or entered into when the order is given,—the order will operate as an equitable assignment of such fund as soon as it

is acquired, and will create an interest in it which a court of equity will enforce.'' (*Brill* v. *Tuttle*, 81 N. Y. 454; *Mc-Fadden* v. *Wilson*, 96 Ind. 253; *Macomber* v. *Doane*, 2 Allen 541; *Tripp* v. *Brownell*, 12 Cush. 376.) The order given, therefore, by Tyler to the plaintiff bank upon the mining company was a valid assignment of property to be acquired in the future, and created in the bank an interest in the fund to be acquired, which equity may enforce.

Nor do we doubt the general doctrine contended for by appellant, that a plaintiff may waive an action in tort, and sue in *assumpsit*, where the property has been wrongfully taken, and converted into money. ''If a man,'' says Addison on Torts, ''has taken possession of property, and sold or disposed of it, without lawful authority, the owner may either disaffirm his act, and treat him as a wrongdoer, and sue him for a trespass or for a conversion of property, or he may affirm his acts, and treat him as his agent, and claim the benefit of his action, and if he has once affirmed his acts, and treated him as his agent, he cannot afterwards treat him as a wrongdoer; nor can he affirm his acts in part, and avoid them as to the rest. If, therefore, goods have been sold by a wrongdoer, and the owner thinks fit to receive a price therefor, he ratifies and adopts the transaction, and cannot afterwards treat it as a wrong.''

But it is unnecessary to enter into any discussion of this doctrine in this particular action, because, under the facts, we do not think that the remedy pursued by the plaintiff is correct. If the case were one where specific property in the hands of the mining company had been levied upon by the constable under his writ, and he had levied with notice of the assignment by Tyler to the plaintiff bank, and had sold the specific property claimed by the bank, doubtless the action would lie, and the case of *Young* v. *Marshall*, 8 Bing. 43, would control, upon the principle that the sheriff having sold particular goods under a writ of *fi. fa.*, with notice of a previous assignment by the defendant, and having paid over the proceeds of the sale to the plaintiff, an action for money had and received

might be maintained to recover the proceeds of the sale of the specific property. In that case it was urged that the property was changed by the sale, but it was held by Alderson, J., that while the property was changed by the sale, as between a purchaser and the party against whom the execution has issued, yet it was not changed as against a party whose goods had been wrongfully taken. The same rule is sustained in *Notley* v. *Buck*, 8 Barn. & Cr. 86. But the case at bar is different. Here Merrell & Co. placed a writ in the hands of the defendant, as constable, commanding him to attach the debts due to Tyler by the Granite Mountain Mining Company. Acting strictly in pursuance of the authority of this writ, the constable served the necessary notices upon the mining company, telling them that all funds in their hands, due to Tyler, were attached to satisfy the claim of Merrell & Co. The mining company, although it knew of the assignment or order of Tyler, responded by confessing that it had money in its hands belonging to Tyler. The officer was not obliged, under such circumstances, to disregard the acknowledgment of the company, and to desist from further proceedings under his writ. When the execution was levied the company, although notified of the bank's claim, without objection or protest of any kind on its part, paid the officer the amount of the claim of Merrell & Co. It thus again admitted an indebtedness to Tyler. These acknowledgments and acts were sufficient to protect the officer from liability in this suit. Under such circumstances the answer of the garnishee was properly taken as true by the officer, and in the absence of any mistake, fraud, collusion or deception, the constable who proceeded under his writ of execution was not obliged to decline the money which the mining company confessed it owed to Tyler, even though he was notified by the bank of the assignment by Tyler to the plaintiff. (*Haase* v. *Corbin*, 2 Mont. 409; *Kelley* v. *Tibbals*, 53 Pa. St. 408; *Coombs* v. *Davis*, 2 Wash. T. 466, 7 Pac. 860; Shinn on Attachments, § 640; Drake on Attachment, § 651 *et seq.*) Of course, this confession of the mining company and payment to the constable in no way discharged its debt to the plaintiff bank

in this case, under the order executed in favor of the bank by Tyler. (*Chamberlin* v. *Gilman*, 10 Col. 94, 14 Pac. 107; *Coleman* v. *Scott*, 27 Neb. 77, 42 N. W. 896; Freeman on Ex'n., § 170.) But, after the money collected under the execution has been paid to the creditors of Tyler, we cannot see how the conduct of the officer renders him liable to the bank, in equity and good conscience, for the payment of the sum so collected. He proceeded under the strict command of his writ, and knowledge obtained in legal manner.

*St. Johns* v. *Charles*, 105 Mass. 262, in some respects resembles this case. There St. Johns made a contract with Charles to cut brush for $100 in money and the loose wood on the lot. Afterwards St. Johns had begun the job, but, before it was accepted by Charles, St. Johns, for a consideration, signed and gave to Taft an order on Charles for all the money belonging to him for cutting the brush. Charles had notice of the order, and the contract was performed. Thereafter Charles was requested to pay the order to Taft, but neglected to do so. After suit was brought by St. Johns, Charles, without giving Taft any notice of it, paid St. Johns $25 in money, and took his receipt in full for the contract. On the trial Charles contended that he was discharged by reason of the receipt in settlement, and that the same was a complete defense, notwithstanding the order of St. Johns. But the court held that the settlement made between St. Johns and Charles was no bar or defense to the right of Taft to prosecute suit for his own benefit, that the effect of the order was to assign to Taft all the money that should be earned under the existing contract, and that the rights of Taft under the assignment after notice could not be defeated by a payment and discharge from the assignor.

It seems clear that the plaintiff's action lies against the mining company, but, after full consideration, we think that it would not be safe to hold an officer liable who proceeds, under proper mandate, to satisfy a judgment by accepting money acknowledged, as in this case, to be due from a garnishee to the defendant in the suit wherein the execution has issued, and

where the money is paid, in accordance with such acknowledgment, and without objection, to the official.

The judgment and the order denying a new trial are affirmed.

*Affirmed.*

PEMBERTON, C. J., concurs.   DE WITT, J., not sitting.