NO. 95-291

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

MARION SMITH,

      Plaintiff and Appellant,

  v.

ELECTRONIC PARTS, INC.,

      Defendant and Respondent.

FILED

DEC 12 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Richard M. Baskett, Attorney at Law,
Missoula, Montana

      For Respondent:

          Alan F. Blakley, Blakley and Velk,
Missoula, Montana

Submitted on Briefs:  November 16, 1995

Decided:  December 12, 1995

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On January 17, 1995, Marion Smith moved the Fourth Judicial District Court in Missoula County for a preliminary injunction to prevent Electronic Parts, Inc.'s (EPI) counsel from continuing to represent the corporation; to enjoin EPI's officers, agents, and employees from altering any of the corporation's documents; and to order that those documents be produced for inspection and copying. That same day, EPI sought an injunction to prevent Smith from attempting to enforce the provisions of a stock redemption agreement and to order Smith to take necessary actions to receive full payment pursuant to the agreement. Smith later moved for a second injunction to enjoin a meeting of EPI's corporate shareholders. On January 26, 1995, after a hearing to consider both parties' motions, the court entered an order which denied both of Smith's motions for injunction, granted EPI's motion for an injunction, and imposed Rule 11 sanctions against Smith and Smith's counsel. Smith appeals the District Court's order. We affirm the District Court's denial of Smith's applications for injunctions, decline to decide the issue of EPI's injunction against Smith based on mootness, and remand for a hearing on the issue of Rule 11 sanctions.

There are three issues on appeal:

1. Did the District Court abuse its discretion when it denied Smith's motions for injunctions?

2. Did the District Court abuse its discretion when it granted EPI's motion for a preliminary injunction?

3. Did the District Court err when it assessed Rule 11 sanctions against Smith and his attorney?

FACTUAL BACKGROUND

Prior to January 20, 1986, Marion Smith was the sole shareholder and director of Electronic Parts, Inc. (EPI). On January 20, 1986, Smith sold his interest in the corporation as part of a complicated transaction that involved the redemption of the bulk of his stock in EPI; the sale of 101 shares of his stock to Bob Lussy and ninety-nine shares of his stock to his son, Stephen Smith; and the gift of ten shares to John Tester.

The redemption of Smith's stock was set forth in a Stock Redemption Agreement. The agreement required EPI to make monthly payments to Smith for the redemption of 790 shares of common stock over a ten-year period, and obligated EPI to carry life insurance on Stephen Smith and Bob Lussy in aggregate amounts sufficient to cover the outstanding balance and accrued interest owed to Smith during that period. The agreement further provided that Smith would have the right to inspect all business records and demand inventories at his discretion during the redemption period.

On January 20, 1986, Smith also entered into a Consulting Agreement with EPI. Pursuant to the terms of the agreement, Smith was to receive 2.0 percent of EPI's gross sales on a monthly basis. However, the agreement provided that upon the occurrence of certain

conditions, the payment would be reduced to 1.4 percent of the gross sales. In 1992, after Bob Lussy had bought out Stephen Smith's entire interest in EPI, the corporation reduced the payment from 2.0 percent to 1.4 percent. Marion Smith brought suit against EPI to collect the difference between 2.0 percent and 1.4 percent, and to request other relief. That suit is still pending.

Bob Lussy died on December 12, 1994. At that time, EPI still owed Smith approximately $17,000 pursuant to the Stock Redemption Agreement. The corporation did have life insurance on Lussy at the **time** of his death in an amount sufficient to pay this balance to Smith, as required by the Stock Redemption Agreement. Smith, however, did not accept the payment and instead began a series of efforts to reinstate himself as an officer of the corporation.

On January 15, 1995, Smith held a telephonic conference call with his attorney, Richard Baskett, and John Tester, who still owned ten shares of stock in EPI. Smith took the position at that time that he was the sole remaining director of the corporation pursuant to the terms of an agreement which had been executed on January 20, 1986, between Smith, Lussy, and Stephen Smith. That agreement, referred to by both parties as the "Consent to Action," provided in part that:

> Notwithstanding any provision contained in the Montana Business Corporation Act, the articles of incorporation or the bylaws, the directors and shareholders jointly agree that they shall retain Marion R. Smith, as a director, provided [Smith] wishes to serve in that capacity, during the 10 **year term** of the Redemption Agreement . . ."

4

Smith also took the position that based upon another document, the Stock Purchase and Redemption Agreement, dated January 20, 1986, John Tester was the only shareholder with shares in EPI that could be voted.

During the conference call, Smith purported to appoint Tester as the replacement director for Bob Lussy. Thereafter, Smith and Tester purported to terminate Alan Blakley's legal representation of the corporation, and to elect Smith as president of EPI.

Smith notified Blakley of the results of the telephonic conference on January 15, 1995. Blakley, however, sent Smith a reply letter in which he stated that he did not recognize the actions of Smith and Tester, that he would continue to represent the corporation, and that he would file an application for injunctive relief.

On January 17, 1995, Blakley filed an application for injunctive relief on behalf of EPI to enjoin Smith from attempting to enforce the provisions of the Stock Redemption Agreement and to order Smith to accept the $17,000 insurance check as full payment pursuant to the agreement. That same day, Smith filed a motion for injunctive relief to enjoin Blakley from continuing to represent EPI; to enjoin EPI's officers, agents, and employees from altering any of the corporation's documents; and to order that those documents be produced for inspection and copying. Smith later moved for a second injunction to enjoin a meeting of the corporate shareholders called by the personal representative of Robert

Lussy's estate. *On January 26, 1995,* the court denied Smith's applications for injunctions, granted EPI's injunction against Smith, and imposed Rule 11 sanctions against Smith and Smith's counsel.

ISSUE 1

Did the District Court abuse its discretion when it denied Smith's motions for injunctions?

The grant or denial of an injunction is a discretionary ruling of the trial court which we will not overturn absent an abuse of discretion. *Sebena v. State*(1994), 267 Mont. 359, 366, 883 P.2d 1263, *1267.* The party seeking injunctive relief must prove his right to the injunction. *Sebena,* 883 P.2d at 1267.

In this case, Smith sought two injunctions based on his claim that he was the sole remaining director of EPI as of the date of Robert Lussy's death. Smith maintained that because he was a director he was entitled to terminate Alan Blakley as EPI's counsel, elect John Tester as a director of the corporation, and inspect and review EPI's corporate records. Smith further maintained that, as director, he was entitled to prevent a meeting of the corporate shareholders called by the personal representative of Lussy's estate. At the District Court hearing, however, Smith did not establish that he was a director of the corporation, and therefore, did not prove his right to the injunctions.

The Consent to Action agreement provided that Smith would be retained as a director of EPI "<u>provided [he] wishes to serve in</u>

that __capacity.__" (Emphasis added.) The record is clear, however, that Smith had never chosen to serve as a director for EPI. At the hearing before the District Court, Smith freely admitted that he had not acted as a director of the corporation in any way since he sold his interest in EPI in January 1986. Smith testified that he did not attend any director's meeting, and that he had not inquired about the director's meetings or activities. He testified that he did not ask any corporate employees if he was still a director of EPI or inform any corporate employees that he would be acting in his capacity as director before he arranged the telephonic meeting on January 15, 1995. Furthermore, Helen Kolokotrones, who had been present at all the board meetings from 1986 through 1995, testified that Robert Lussy was the sole director of EPI on the date of Lussy's death. A Montana Annual Corporation Report filed with the Secretary of the State in 1995, and admitted as an exhibit in the District Court hearing, confirmed Kolokotrones's testimony that Lussy was the sole director of the corporation in 1994.

Smith's claim that he is a director of the corporation was further undermined by deposition testimony which he gave in January 1993, and by his pending suit against EPI for his consulting fee. On January 18, 1993, Smith testified that he could not "recall" being retained as a director of EPI. In his pending suit against EPI, he did not inform the corporation or the District Court that he was a director of the corporation against which he had filed suit. These factors, combined with Smith's demeanor during direct

7

and cross-examination at the District Court hearing, led the court to find that "Smith is not a credible witness."  In fact, after it heard all testimony presented at that hearing, the court stated that "[o]n January 15, 1995, Smith knew that he was not a director of Corporation."   (Emphasis added.)

We conclude that the District Court's finding that Smith was not a director was supported by substantial evidence and was not clearly erroneous.  Therefore, we conclude that the District Court did not abuse its discretion when it denied Smith's motions for injunctive relief.  Because Smith did not establish that he was a director of EPI as of the date of Bob Lussy's death, he did not prove his right to terminate EPI's corporate counsel, inspect corporate records, or enjoin the meeting of the corporate shareholders called by the personal representative of Lussy's estate.

ISSUE 2

Did the District Court abuse its discretion when it granted EPI's motion for a preliminary injunction?

Following a hearing on Smith's and EPI's motions for injunctions, the District Court granted EPI's motion for an injunction against Smith.  The court stated:

> Smith is enjoined from this date from making any demands upon Corporation pursuant to that Stock Redemption Agreement, dated January 20, 1986, under which he sold 790 shares of stock to Corporation, and he is enjoined from attempting to enforce in any way any provisions of that Agreement . . . .

On August 7, 1995, EPI filed an affidavit from the general counsel of the insurance company that held Lussy's life insurance policy. The affidavit stated that the company had issued a check in the amount of $17,236.74 payable to Smith pursuant to the terms of the Stock Redemption Agreement and that Smith had endorsed the check and was paid on or about May 4, 1995. Smith failed to object to EPI's submission of the affidavit and, in fact, conceded in his reply brief that he had accepted the check. Although this Court is not an evidentiary tribunal and does not accept evidence beyond that which is submitted at the trial court level, we will accept both parties' representations that Smith did in fact receive payment pursuant to the terms of the Stock Redemption Agreement as a stipulated fact.

The Stock Redemption Agreement clearly states that Smith may enforce the terms of the agreement only "during the redemption of his shares of common stock to Corporation." Since it is stipulated that EPI redeemed Smith's shares of common stock in May 1995 when Smith accepted full payment pursuant to the Stock Redemption Agreement, it is clear that Smith no longer has any rights pursuant to that agreement and can no longer enforce the terms of that agreement. It is therefore clear that we need not address the issue of EPI's injunction against Smith pursuant to the Stock Redemption Agreement because that issue is moot.

It is well established that this Court may not address moot questions. *See, e.g., State ex rel. Miller v. Murray* (1979), 183 Mont. 499, 600

P.2d 1174; *In re T.J.F.* (1987), 229 Mont. 473, 747 P.2d 1356. In *Miller*, we defined a moot question as "one which existed once but because of an event or happening, it has ceased to exist and no longer presents an actual controversy." *Miller*, 600 P.2d at 1176. In In *re T.J.F.*, we held that:

> A case will become moot for the purpose of an appeal "where by a change of circumstances prior to the appellate decision the case has lost any practical purpose for the parties, for instance where the grievance that gave rise to the case has been eliminated . . . ."

*In re T.J.F.*, 747 P.2d at 1357 (quoting *5 Am. Jur. 2d Appeal and Error § 762* (1962)).

Because Smith accepted payment pursuant to the terms of the Stock Redemption Agreement, he has no further rights pursuant to that agreement, and the issue of whether he should be enjoined from enforcing those rights and should be compelled to accept payment is moot.

Therefore, we need not and do not decide whether the District Court abused its discretion when it granted the injunction sought by EPI.

ISSUE 3

Did the District Court err when it assessed Rule 11 sanctions against Smith and his attorney?

In its opinion and order, the District Court imposed Rule 11 sanctions against Smith and his attorney. At that time, the court directed EPI to submit an affidavit of costs and fees and gave Smith ten days to object and request a hearing on the matter.

10

Although EPI did file an affidavit and Smith did object to the sanctions, a hearing has not yet been held. Smith now appeals the assessment of the costs and fees. He maintains that the sanctions were not justified pursuant to Rule 11 because he believed that his applications for injunctive relief were well-grounded in fact and supported by the law. He further maintains that he is entitled to a separate hearing on the issue of sanctions.

This Court has held that a trial court must give notice and afford an opportunity to be heard before it imposes Rule 11 sanctions. *Lindey's. Inc. v. Goodover* (1994), 264 Mont. 489, 497, 872 P.2d *767, 772.* We have held that a hearing is necessary to provide the party with due process by affording it a sufficient opportunity to defend against the imposition of sanctions. *Lindey's, 872* P.2d at *772.* In addition, we have held that the trial court should identify in its judgment or order the pleadings, motions, or other papers on which it bases the imposition of Rule 11 sanctions. *Lindey's, 872* P.2d at 772.

Since the District Court has not yet held a hearing on the issue of Rule 11 sanctions, and therefore, has not yet set forth its rationale for the imposition of attorney fees and costs, we remand for notice and a hearing as mandated by our decision in *Lindey's.*

We affirm the District Court's order as it relates to the denial of Smith's motions for injunctions, decline to review the District Court's order which granted EPI's motion for an

injunction, and remand for further proceedings regarding the issue of Rule 11 sanctions.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

12

December 12, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Richard M. Baskett
Attorney at Law
1001 So. Higgins Avenue
Missoula, MT 59801

Alan F. Blakley
Attorney at Law
P.O. Box 7215
Missoula, MT 59807-7215


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy