No. 99-160

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 98

299 Mont. 256

1 P. 3d 929

---

RUSSELL H. BRANDT and

EILEEN A. BRANDT,

Plaintiffs and Appellants,

v.

STEVE SANDE, an Individual

d/b/a LAND TITLE SERVICES,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert L. Johnson, Lewistown, Montana

For Respondent:

James L. Stogsdill, Lewistown, Montana

_____

Submitted on Briefs: September 2, 1999

Decided: April 18, 2000

Filed:

_____

Clerk

James C. Nelson delivered the Opinion of the Court.

¶1 Russell H. Brandt and Eileen A. Brandt (the Brandts) brought this action in the District Court for the Tenth Judicial District, Fergus County, to recover $20,000 lost in an investment alleging that Steve Sande (Sande), an escrow agent, negligently failed to disburse the money to them from a real estate closing. The District Court granted summary judgment in favor of Sande and imposed sanctions against the Brandts. The Brandts appeal and we affirm.

¶2 We address the following issues on appeal:

¶3 1. Whether the District Court erred in concluding that Sande was not presented with an equitable assignment of closing proceeds.

¶4 2. Whether the District Court erred in imposing sanctions upon the Brandts.

**Factual and Procedural Background**

¶5 In 1995, the Brandts invested in Esplanade, Inc., a condominium development

corporation in Lewistown. Sande served as escrow agent for the closing of a real estate sale and purchase transaction between Gordon McGuire (McGuire), president of Esplanade, Inc., and the Joe and Vesta Wichman Family Trust (Wichman Trust).

¶6 On August 4, 1995, the Brandts gave Esplanade, Inc., a check for $20,000 in exchange for a promissory note signed by McGuire. The note read, in pertinent part:

> These funds loaned to Esplanade, Inc. are due and payable with interest at the close of the Vesta Wichman suite, Esplanade # 203, on or about or possibly before October 15, 1995. The annual percentage rate of interest is 18%.
>
> A Letter of Instruction concerning this Note will be sent to Land Title and a confirmation to Russell Brandt for the pay-off will be sent to the Brandts.

McGuire sent the letter referred to in the note to Linda Crimmins of Land Title Services (LTS) on August 11, 1995. It read:

> At the Wichman closing, suite 203, on or about October 15, 1995 I want you to pay Russell Brandt $20,000.00 plus the accrued interest on that $20,000.00. I will advise you specifically at closing what the interest amount is.
>
> Please send the Brandt's [sic] a letter of confirmation that this is in place.

Neither McGuire nor the Brandts forwarded a copy of the promissory note to LTS.

¶7 On August 18, 1995, LTS sent a letter to the Brandts acknowledging receipt of the August 11, 1995 instructions from McGuire. However, over two months later, on October 25, 1995, McGuire delivered a letter to LTS that read: "Per the Wichman escrow concerning the $20,000.00 due Russell Brandt at that closing, this letter hereby rescinds that instruction."

¶8 LTS received various payments relating to the Wichman condominium over the summer and fall of 1995. On July 10, 1995, LTS received $25,000 which was immediately disbursed to Esplanade, Inc. LTS also received $35,000 on October 23, 1995, and $6,670 on October 26, 1995. Pursuant to instructions from Esplanade, Inc., LTS disbursed checks on October 25, 1995, from the Wichman account to Esplanade, Inc., and United Building Center totaling $23,246.14.

¶9 Thereafter, on October 26, 1995, Esplanade, Inc., conveyed all interests in the condominium development to David Schlosser (Schlosser) who subsequently deeded the project to Esplanade of Central Montana, Inc. (ECMI). LTS disbursed $331.80 from the Wichman account for title insurance on October 30, 1995. A balance of $18,092.06 remained in the Wichman account until LTS disbursed this amount to ECMI in three separate payments made on December 26, 1995, January 11, 1996, and April 10, 1996.

¶10 On November 14, 1995, prior to the disbursement of these funds, the Brandts signed an agreement with Schlosser, the president of ECMI. The agreement expressly released and discharged any and all outstanding claims the Brandts held against Esplanade, Inc. The Brandts also signed a letter seemingly affirming McGuire's rescission of the instruction to disburse $20,000 plus interest to the Brandts from the Wichman closing. This new set of instructions read:

> 1. No distribution shall be carried out under earlier instructions from RUSSELL BRANDT, et. al.;
>
> 2. All prior instructions are hereby terminated and to be held for naught with no payments to be made through LAND TITLE SERVICES unless and until further instructions are given to you hereafter.

Copies of the new escrow instructions and the release agreement were mailed to LTS.

¶11 Almost two years later, on October 15, 1997, the Brandts, acting *pro se*, filed suit alleging that Sande and LTS negligently and wrongfully misapplied $20,000 from the Wichman escrow account. Service of process was not completed until 11 months later on September 16, 1998. Sande subsequently filed a Motion to Dismiss pursuant to Rule 12(b)(6), M.R.Civ.P., and requested that the court consider imposing sanctions against the Brandts under Rule 11, M.R.Civ.P., for signing and filing a frivolous complaint that was not warranted by existing law or fact and was not based on a good faith argument for the modification of existing law. In their reply brief, the Brandts attempted to show that sanctions were not appropriate in this case.

¶12 The District Court scheduled a hearing for December 1, 1998, on the motion for sanctions and the motion to dismiss, which had been converted to a motion for summary judgment. At the hearing, the arties presented oral argument on both motions.

¶13 On December 18, 1998, the District Court entered its order granting summary judgment in favor of Sande and imposing sanctions upon the Brandts. The Brandts moved to amend the order and submitted two additional affidavits and a brief for the court's consideration. The court denied all post-judgment motions, affirmed the order of sanctions against the Brandts, and set a date to hear the Brandts' objection to Sande's attorney's fees.

At the hearing, the court determined that $4000 was a reasonable attorney's fee in this case. Thus, the court ordered that the Brandts pay Sande's attorney's fees in that amount as well as Sande's costs in the amount of $110.

¶14 The District Court issued final judgment on March 9, 1999. The Brandts now appeal the court's judgment as well as its December 18, 1998 and February 1, 1999 orders.

## Issue 1.

¶15*Whether the District Court erred in concluding that Sande was not presented with an equitable assignment of closing proceeds.*

¶16 The District Court determined that there was neither a valid assignment, nor legal notice of an assignment, to the Brandts of an interest in the proceeds from the Wichman closing. Hence, the court granted summary judgment in favor of Sande on the grounds that Sande owed no legal duty to the Brandts.

¶17 Our standard of review in appeals from summary judgment rulings is *de novo. Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21 (citing *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Oliver*, ¶ 21 (citing *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903). We set forth our inquiry in *Bruner* as follows:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the

legal determinations made by a district court as to whether the court erred.

*Oliver, ¶ 21 (quoting Bruner, 272 Mont. at 264-65, 900 P.2d at 903).*

¶18 Moreover, in a summary judgment proceeding, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences will be drawn therefrom in favor of the party opposing summary judgment. *Oliver*, ¶ 22 (citing *Joyce v. Garnaas*, 1999 MT 170, ¶ 8, 295 Mont. 198, ¶ 8, 983 P.2d 369, ¶ 8). Consequently, we will view the evidence in the light most favorable to the Brandts and all reasonable inferences will be drawn in their favor.

¶19 On July 8, 1995, McGuire entered into an escrow agreement with the Wichman Trust to govern the collection and disbursement of funds from the sale and purchase of a condominium in the Esplanade project. Sande served as the escrow holder and agent. The agreement signed by the principals delineated the duty of the escrow agent to follow the written instructions of the parties in the disbursement of money, instruments or other documents received by the escrow holder. As a convenience to the parties, Sande disbursed funds to various creditors of Esplanade, Inc., at the direction of McGuire.

¶20 The Brandts do not dispute that they were not a party to the escrow agreement. However, they argue that the "settled Montana precedent that surely applies in this case is *Merchants and Miners National Bank vs. Barnes* (1896), 18 Mont. 335, 45 P. 218." They cited *Barnes* for the proposition that "an order to pay money out of a fund to be acquired in the future is, in Montana, held to be an assignment of an interest in the fund which is directly enforceable against the holder." They argue that McGuire's apparent repudiation was of no effect because his control over the portion of the proceeds of the Wichman closing that he transferred to the Brandts ceased immediately upon his assignment.

¶21 However, *Barnes* is distinguishable from this case. In *Barnes*, an employee drafted a wage assignment in favor of a bank as security for a loan. The wage assignment used unambiguous language to identify the wages affected. In turn, the bank delivered the wage assignment to the employer. When the employer opted to give the designated wages to the county sheriff pursuant to a writ rather than to the bank, the court held the employer liable for the error. *Barnes*, 18 Mont. at 341, 45 P. at 221.

¶22 Unlike the case before us on appeal, the wages affected in *Barnes* were clearly identified and the wage assignment was presented to the employer by the bank. In

addition, the amount of the payment was unconditional and the relationship of the assignor and assignee, as well as the purpose of the assignment as security for a bank loan, was understood by the employer.

¶23 In the present case, nothing in the letter of instruction from McGuire to LTS alerted Sande to the possibility of an assignment. The letter made no reference to assignment and was equivocal in terms of time and amount of payment. Moreover, the letter leaves several questions unanswered including what would happen if other instructions from McGuire consumed all of the proceeds of the closing. The Brandts never asserted an irrevocable interest in the closing proceeds either prior to the closing or during the entire period that the funds were in Sande's possession. And finally, the fiduciary obligation owed by Sande to Esplanade, Inc., to strictly adhere to the principal's instructions was not present in *Barnes*. Consequently, we do not find *Barnes* to be persuasive.

¶24 Under Montana law, an account debtor--in this case, the escrow agent--must have adequate notice of an assignment before an assignee can hold the agent liable for wrongful payment. Section 30-9-318(3), MCA. In *First Fidelity Bank v. Matthews* (1984), 214 Mont. 323, 330-32, 692 P.2d 1255, 1259-60, a debtor who had no direct notice of an assignment was held not liable for making continued payments to the assignor. The Court applied § 30-9-318(3), MCA, to the facts of that case and went on to assert that even if notice of assignment had been given to the debtor, the debtor could have continued to make payments to the assignor without liability as long as the assignee did not intervene.

¶25 The Brandts argue that Sande and the District Court are arguing over the wrong document. While Sande and the court look to the promissory note, the Brandts argue that it was McGuire's letter instructing Sande to pay the Brandts that vested the Brandts with an interest in the Wichman money. We disagree. Section 30-9-318(3), MCA, provides that a "notification which does not reasonably identify the rights assigned is ineffective." Without a copy of or even reference to the promissory note, no basis existed upon which Sande might infer that the instruction could have reflected a security interest on a loan.

¶26 The Brandts further argue that notice to Sande under the provisions of § 30-9-318(3), MCA, was not required because the assignment of the proceeds was for the purpose of collecting on the promissory note and not to provide a security interest to the Brandts. The Brandts note that some unsecured transactions are excluded from the provisions of Title 30, Chapter 9 of the Montana Code. For example, Title 30, Chapter 9, does not apply

to a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract, or a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness; . . .

Section 30-9-104(6), MCA.

¶27 However, as Sande notes in his brief on appeal, this statute refers to the sale, transfer or assignment of accounts receivable for goods or services. *See* § 30-9-106, MCA (defining an "account" as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance.") The Wichman-Esplanade agreement is a written contract giving Esplanade, Inc., the right to receive payment in consideration for the conveyance of real property. The type of accounts referenced by § 30-9-104(6), MCA, bear no relation to the Wichman-Esplanade escrow agreement or to the proceeds from the purchase and sale of real property.

¶28 Since Sande did not have notice of an assignment of the closing proceeds, we conclude that he is not liable under an assignment theory pursuant to § 30-9-318(3), MCA. Furthermore, the duty of an escrow agent is narrowly defined by law. An agent is bound to comply only with the instructions of the parties to the escrow agreement and may not exceed this authority. *Pope v. Savings Bank of Puget Sound* (9th Cir. 1988), 850 F.2d 1345, 1353. No duty on the part of an escrow agent extends to third parties or persons who are not parties to the escrow agreement. Moreover, the escrow agent occupies a fiduciary responsibility to the parties to the escrow transaction. *DeMello v. Home Escrow, Inc.* ( Haw. 1983), 659 P.2d 759, 763. *Accord Fortier v. Larabie Bros. Bankers* (1925), 74 Mont. 602, 241 P. 237 (wherein this Court held that the bank's only duty was to hold payments for the use and payment of the principal to the escrow account).

¶29 Sande fulfilled a legal, fiduciary duty by strictly following the instructions of the principals to the Esplanade-Wichman escrow account. The principals assigned no funds to the Brandts and, thus, the Brandts had no right to any part of the monies held in escrow. Moreover, the Brandts asserted no demand for payment from the Esplanade-Wichman escrow account during the entire time the funds were in Sande's possession.

¶30 As the District Court noted in its December 18, 1998 order:

> Certainly it is not an escrow agent's duty to assume that every instruction is backed by an assignment nor is it an escrow agent's duty to inquire as to the existence of an assignment. The escrow agent, under these circumstances, owed no legal duty to the Brands and, in fact, would have violated their fiduciary duty to Esplanade, Inc. had funds been distributed to Brandts in violation of Esplanade, Inc.'s specific written instructions of October 25, 1995.

Sande received nothing more than written instructions as to how it was to distribute proceeds at the request of a party to the transaction. Those written instructions could be modified or completely rescinded at any time by that party. Though Brandts could have executed a written assignment with Esplanade, Inc. and McGuire to assure McGuire would not rescind its instructions, Brandts did not do so.

¶31 Accordingly, we hold that the District Court did not err in granting summary judgment in favor of Sande on the grounds that Sande owed no legal duty to the Brandts.

## Issue 2.

¶32 *Whether the District Court erred in imposing sanctions upon the Brandts.*

¶33 The District Court determined that the Brandts were not acting in good faith in pursuing their claim against Sande because their lawsuit "has no basis in law or fact" and their conduct "was not reasonable under the circumstances." In its December 18, 1998 order wherein the court imposed Rule 11, M.R.Civ.P. sanctions against the Brandts, the court stated that the Brandt's complaint was "an attempt to obtain payment from an innocent third party after they no longer could recover their investments and loans from the original obligors." Moreover, in its February 1, 1999 order regarding post-judgment motions, the court noted that for the Brandts to assert a claim against Sande for merely following his client's instructions "is simply not even supported by logic yet alone by case or statutory authority." Thus, the District Court imposed Rule 11 sanctions upon the Brandts in the form of Sande's reasonable attorney's fees and costs expended in defending this action.

¶34 Rule 11, M.R.Civ.P., provides that all pleadings must be signed and that:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Furthermore, sanctions under Rule 11 shall be imposed if a pleading is frivolous or filed for an improper purpose. The sanctions outlined in Rule 11 are:

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

¶35 The purpose of Rule 11 is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *D'Agostino v. Swanson* (1990), 240 Mont. 435, 444, 784 P.2d 919, 925 (citing Rule 11, F.R.Civ.P., advisory committee note). Montana's Rule 11 is similar in many respects to the federal rule. Consequently, in *D'Agostino*, we adopted a standard of review for actions wherein Rule 11 sanctions have been imposed that combines the standards utilized by the federal courts. As a result, we held in *D'Agostino* that a district court's findings of fact will be overturned if clearly erroneous, and a court's legal conclusion that the facts constitute a violation of Rule 11 will be reversed if the determination constitutes an abuse of discretion. *D'Agostino*, 240 Mont. at 446, 784 P.2d at 926. We also determined that we will review the case *de novo* only if the violation is based on the legal sufficiency of a plea or motion. *D'Agostino*, 240 Mont. at 446, 784 P.2d at 926.

¶36 However, in *Smith v. Electronic Parts, Inc.* (1995), 274 Mont. 252, 907 P.2d 958, we held that, before imposing Rule 11 sanctions, a trial court must provide the party with due process by giving them notice to show cause and affording them an opportunity to be heard and to defend against the imposition of sanctions. *Smith*, 274 Mont. at 259, 907 P.2d at 962 (citing *Lindey's Inc. v. Goodover* (1994), 264 Mont. 489, 497, 872 P.2d 767, 772). In addition, the trial court should identify in its judgment or order the pleadings, motions,

or other papers on which it bases the imposition of Rule 11 sanctions. *Smith*, 274 Mont. at 259, 907 P.2d at 962.

¶37 In the case *sub judice*, the Brandts argue on appeal that they were denied their right to due process when the District Court imposed sanctions upon them. They contend that Sande had not moved for sanctions or noticed up any such motion for hearing; that there were no specific charges levied against them; and that they were not afforded an evidentiary hearing on the charges. They also contend that they did not receive notice of the District Court's intention to impose sanctions in sufficient time to allow them to prepare a defense.

¶38 On the contrary, the record in this case reveals that Sande had moved for sanctions; that the "charges" levied against the Brandts were for filing a frivolous complaint; that a hearing was conducted in this matter; and that the Brandts were given sufficient notice of that hearing. The complaint in this matter was filed on October 15, 1997, but service of process was not completed until September 16, 1998. On October 5, 1998, Sande filed a Motion to Dismiss and supporting brief along with an affidavit. In that supporting brief, Sande requested that the District Court impose Rule 11 sanctions against the Brandts "for signing and filing a frivolous Complaint that is not warranted by existing law or fact and is not based on a good faith argument for the modification of existing law."

¶39 In their brief opposing Sande's Motion to Dismiss, the Brandts addressed the issue of Rule 11 sanctions stating that it was their understanding that Sande "really wants summary judgment and sanctions" and they attempted to show in their brief that Sande was "not entitled to either one." Consequently, it is clear that the Brandts were well aware that Sande had moved for sanctions in this case based on the Brandts' complaint.

¶40 The record also indicates that notice of the December 1, 1998 hearing on Sande's Motion to Dismiss was mailed to counsel for the Brandts on November 9, 1998. Since Sande's request for imposition of sanctions was included in his Motion to Dismiss, the Brandts were on notice that sanctions would be argued at the hearing along with the other issues as related in Sande's motion.

¶41 At the hearing, the District Court heard oral argument on Sande's motion (converted to a motion for summary judgment) as well as Sande's request for Rule 11 sanctions. And, not only did both parties address the issue of Rule 11 sanctions at the hearing, but the Brandts made no objection to Sande presenting argument on Rule 11 sanctions or to

consideration of the Rule 11 issue by the court. In addition, in their supplemental brief submitted two days after the hearing, the Brandts offered additional defense against the imposition of sanctions and urged the court to, instead, impose Rule 11 sanctions against Sande and his attorney.

¶42 After the District Court issued its December 18, 1998 order granting summary judgment in favor of Sande and imposing sanctions against the Brandts, the Brandts moved to amend. This motion was accompanied by affidavits from Russell Brandt and the Brandts' attorney as well as a supporting brief wherein the Brandts provided the court with additional defense against the imposition of sanctions. The record indicates that while the District Court took this information into consideration, the court, nevertheless, denied the Brandts' motion to amend, affirmed the imposition of Rule 11 sanctions, and set a date for a hearing on reasonable attorney's fees to be awarded Sande.

¶43 In short, from our review of the record, it appears that the District Court went to great lengths to make certain that the Brandts were afforded due process by giving them notice to show cause and affording them an opportunity to be heard and to defend against the imposition of sanctions. *Smith*, 274 Mont. at 259, 907 P.2d at 962.

¶44 Accordingly, we hold that the District Court did not err in imposing sanctions upon the Brandts.

¶45 In his brief on appeal, Sande urged this Court to also impose sanctions upon the Brandts for filing a frivolous appeal. Our ability to impose sanctions on appeal in a civil case stems from Rule 32, M.R.App.P., which provides:

> If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

Because we conclude that there were reasonable grounds for portions of the Brandts' appeal, i.e., the imposition of sanctions by the trial court, we cannot and will not impose sanctions on appeal in this case. *See Estate of Miles,* 2000 MT 41, ¶ 62, 994 P.2d 1139, ¶ 62, 57 St.Rep. 191, ¶ 62.

¶46 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER