No. 00-283

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 26N


HAROLD ENGLIN and MARY A. BROWN,

Plaintiffs and Appellants,

v.

BOARD OF COUNTY COMMISSIONERS,

YELLOWSTONE COUNTY, MONTANA,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Kelly J. Varnes, Hendrickson, Everson, Noennig & Woodward, P.C., Billings, Montana

For Respondent:

Dennis Paxinos, Yellowstone County Attorney; Mark English, Deputy Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: August 24, 2000

Decided: February 15, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Harold Englin and Mary A. Brown ("Appellants") appeal from the Judgment entered by the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment in favor of the Board of County Commissioners, Yellowstone County, Montana ("Board"). The Appellants contend that the District Court erred when it granted summary judgment in favor of the Board. We affirm in part, reverse in part, and remand.

## BACKGROUND

¶3 The Appellants are owners of three acres of land located at 1442 Ethelyn Avenue, Billings, Montana. The Appellants acquired the property by inheritance in 1982, at which time the property was zoned as "Residential-9600." This zoning classification permits, among other things, single family residences with lot sizes not smaller than 9600 square feet. The property is bordered on the north by Beall Trucking which is zoned "Highway Commercial." To the south, the property is bordered by a single family residence and vacant lot, both zoned Residential-9600. To the east, the property is bordered by a storage barn for a local limousine service zoned "Controlled Industrial." To the west, the property is bordered by the Lockwood Evangelical Church which is zoned Residential-9600.

¶4 In December 1989 the Appellants applied for a zone change of the property from Residential-9600 to Highway Commercial. Highway Commercial zoning classification permits commercial and service businesses intended to provide services to the traveling

public. The Yellowstone County Zoning Commission recommended that Appellants' application for a zone change be granted. On December 21, 1989, the Board denied Appellants' application.

¶5 In November 1997 Appellants again applied for a zone change of the property from Residential-9600 to Highway Commercial. The zoning commission recommended denying Appellants' application. In a letter dated December 2, 1997, the Board informed Appellants that it had denied Appellants' application for a zone change.

¶6 On December 29, 1997, Appellants filed a complaint in the District Court in which they contended that the Board's denial of their 1997 zone change application was arbitrary and capricious and that it constituted a taking by inverse condemnation. The Appellants sought an order requiring the Board to grant their zone change application.

¶7 On October 8, 1999, the Board filed a motion for summary judgment. The District Court held a hearing on the Board's motion for summary judgment on February 4, 2000, at the conclusion of which it granted summary judgment in favor of the Board.

## STANDARD OF REVIEW

¶8 We review a district court order granting summary judgment *de novo* applying the same evaluation as the district court pursuant to Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).*

## ISSUE ONE

¶9 Whether the District Court erred when it granted summary judgment in favor of the Board on Appellants' substantive due process claim?

¶10 Count I of Appellants' complaint alleged that the Board acted arbitrarily and capriciously in denying Appellants' application for a zone change from Residential-9600 to Highway Commercial. Upon the Board's motion for summary judgment, the court concluded that no genuine issues of material fact existed and held that the Board did not act arbitrarily when it denied Appellants' application for a zone change nor did its denial constitute an abuse of discretion.

¶11 Appellants argue that genuine issues of material fact exist with regard to their substantive due process claim which preclude summary judgment. First, Appellants observe that Michael Mathew, a member of the Board, Bill Kennedy, the Board Chairman, and Kerwin Jensen, the county senior planner, all felt that the current zoning, Residential-9600, was an inappropriate zone classification for the property. Second, Appellants claim that the Board did not make a finding which justified its denial of their application for a zone change. Lastly, Appellants note that the zoning commission planning staff recommended approving their application in 1989 and recommended denying their application in 1997. Appellants contend that there is no reason why their property was acceptable for Highway Commercial zoning in 1989 and not acceptable in 1997 when none of the uses of the adjoining properties changed. Appellants insist that the denial of their application was arbitrary and capricious because it had no relation to public health, safety, or morals.

¶12 The Board contends that summary judgment was proper because its denial of Appellants' zone change application was not arbitrary and capricious. First, the Board maintains that the zoning commission recommendation addressed all of the necessary statutory criteria pursuant to § 76-2-203, MCA. Second, the Board insists that its denial of Appellants' application was related to the legitimate interest of preventing an increase in noise and air pollution.

¶13 The Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution protect persons from being deprived of life, liberty or property by state governmental action without due process of law. The guarantee of due process has both a procedural and a substantive component. Determining whether a person's right to substantive due process has been violated requires that we decide whether the challenged governmental act is reasonably related to a legitimate governmental objective. *See Plumb v. Fourth Judicial Dist. Court, Missoula County* (1996), 279 Mont. 363, 372, 927 P.2d 1011, 1016.

¶14 We must determine whether Appellants' have raised a genuine issue of material fact which precludes summary judgment. We note that in a summary judgment proceeding, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences will be drawn therefrom in favor of the party opposing summary judgment. *Brandt v. Sande*, 2000 MT 98, ¶ 18, 299 Mont. 256, ¶ 18, 1 P.3d 929, ¶ 18.

¶15 We do not believe that statements made by members of the Board to the effect that the current zoning of Appellants' property was inappropriate are sufficient to raise a material issue of fact regarding whether the refusal to rezone Appellants' property was arbitrary or capricious. The fact that members of the Board felt that the current zoning of Appellants' property was inappropriate could not establish that the zone change requested by Appellants' was appropriate and therefore should not have been denied. As the District Court observed, there are a range of zoning classifications between the current zone classification of Appellants' property and the zone classification which they requested. The Board could have reasonably determined that neither the current zone classification nor the zone classification requested by the Appellants was appropriate.

¶16 We do believe, however, that the lack of findings justifying the Board's refusal to rezone Appellants' property precludes awarding summary judgment in favor of the Board. Appellants note that the zoning commission recommended rezoning Appellants' property to Highway Commercial in 1989 and recommended denying Appellants' request to rezone in 1997. With regard to the zoning commission's change of mind, Appellants contend that no relevant facts, such as the uses of the adjoining properties, changed during the interim between their two conflicting decisions. The Board notes that regardless of the zoning commission's changing recommendations it has consistently denied Appellants' requests.

¶17 The consistency of the Board's denial of Appellants' requests is clearly not based on the conflicting recommendations of the zoning commission. Without any separate findings made by the Board in support of its denial of Appellants' zone change request, we are unable to determine the basis of the Board's consistent denial. It is possible to infer that the members of the Board accepted the zoning commission's recommendations or thought that the complaints of neighboring property owners had merit. However, it is also possible to infer that the Board has consistently denied Appellants' requests because the Board simply does not like the Appellants. *See Brandt*, ¶ 18 (stating that in a summary judgment proceeding all reasonable inferences will be drawn from the evidence in favor of the party opposing summary judgment).

¶18 We are unable to conclude as a matter of law that, on the basis of the record before us, the Board's denial of Appellants' zone change request was a reasonable and legitimate exercise of its police power. We reverse the dismissal of Appellants' substantive due process claim and remand to the District Court.

## ISSUE TWO

¶19 Whether the District Court erred when it granted summary judgment in favor of the Board on Appellants' takings claim?

¶20 With regard to Appellants' takings claim, the District Court ruled that the Board's denial of Appellants' zone change application did not constitute a taking by inverse condemnation. The basis of this ruling appears to be the District Court's conclusion that the Board did not evince a complete unwillingness to make any zone change but rather was unwilling to grant Appellants' application to change from a Residential-9600 classification to a Highway Commercial classification.

¶21 Appellants contend that the District Court ignored the affidavit of Englin which establishes that the property as zoned Residential-9600 has no value because the cost to develop residential lots conforming to the current zoning would exceed the lots' value. Appellants claim that "it is hard to determine how a District Court could conclude that no taking occurred when facts have been offered that the property is valueless under its current zoning and the regulating entity has refused to change the zoning on two different occasions, without rational explanation."

¶22 The Board maintains that if the imposition of Residential-9600 was a taking by way of inverse condemnation, that taking occurred in 1973 when the Board imposed the Residential-9600 zoning classification. Therefore, the Board maintains, the Appellants do not have a valid takings claim because the applicable two-year statute of limitations has expired and because the right to an inverse condemnation claim does not pass to subsequent purchasers. The Board contends that what the Appellants really want is the increase in value to their property that did not happen due to the denial of their requests for zoning classification changes.

¶23 The Fifth Amendment of the United States Constitution and Article II, Section 29 of the Montana Constitution provide that private property shall not be taken for public use without just compensation. These provisions protect private property owners from

absolute conversion, by way of condemnation, as well as uncompensated takings of property by way of regulation. *See Pennsylvania Coal Co. v. Mahon* (1922), 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed.2d 322.

¶24 With regard to regulatory takings, courts have had little success in devising any set formula for determining when governmental regulation of private property amounts to a taking. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency* (9th Cir. 2000), 216 F.3d 764, 771-72. The Supreme Court has identified two specific circumstances in which a government regulation is categorically a taking: (1) regulations that compel a property owner to suffer a permanent physical "invasion" or "occupation" of his or her property, s*ee, e.g.*, *Loretto v. Teleprompter Manhattan CATV Corp*. (1982), 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868; and (2) regulations that deny "all economically beneficial or productive use of land," *see Lucas v. South Carolina Coastal Council* (1992), 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798. *See generally Tahoe-Sierra*, 216 F.3d at 772-73.

¶25 The Appellants have not presented facts which could establish a categorical taking. The Board's denial of Appellants' requested amendment obviously did not require Appellants to suffer a permanent physical invasion nor did it deny Appellants "*all* economically beneficial or productive use" of their property. The fact that Appellants' property as currently zoned is allegedly valueless, as contended in an affidavit filed by Appellants with the District Court, does not mean that when Board refused to rezone Appellants' property a taking categorically occurred. Appellants property did not become valueless as a result of the Board's denial of their zoning amendment. Rather, if the property is valueless as it is currently zoned, it became valueless before the Board ever acted on Appellants' application. Furthermore, Appellants' have not been deprived of all use of their property. The Board's rejection of Appellants' proposed classification does not necessarily mean that the Board will oppose any reclassification of their property nor does it mean that Appellants cannot maintain their existing uses of the property.

¶26 In the absence of a categorical taking, the Supreme Court has repeatedly recognized that "whether a particular restriction [amounts to a taking] depends largely 'upon the particular circumstances [of each] case'." *Penn Central Transportation Co. v. City of New York* (1978), 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631. In this regard, the Supreme Court and lower courts have indicated that most regulatory takings cases should be resolved by balancing the public and private interests at stake, with three primary factors weighing in the balance: (1) the economic impact of the regulation on the claimant,

(2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action. *Tahoe-Sierra*, 216 F.3d at 771-72 (citing *Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659).

¶27 We do not see how Appellants can establish a takings claim under these factual circumstances. The Board's denial of Appellants' zoning amendment has had absolutely no economic impact on Appellants nor has it interfered with Appellants' distinct investment-backed expectations. When the Appellants acquired the property it was zoned as Residential-9600 and so it remains. Furthermore, this is not a situation such as the one presented in *Loretto* in which the character of the governmental action, a physical occupation of private property, was sufficient on its own to effect a taking.

¶28 Both parties spend considerable time arguing over the applicability of *Knight v. City of Billings* (1982), 197 Mont. 165, 642 P.2d 141. We express no opinion on the continued authority of the takings analysis in *Knight*, an opinion issued prior to a rash of significant United States Supreme Court decisions on regulatory takings such as *Lucas*. We also note that *Knight* is factually distinguishable. In *Knight*, we held that the City of Billings had taken the plaintiffs' right to the "peaceful possession of residential property" by widening an adjoining street, condemning real property on the other side of the street, installing high intensity lights, and providing traffic signals which resulted in a twenty to thirty percent reduction in the value of the plaintiffs' properties. *Knight*, 197 Mont. at 173, 642 P.2d at 145. In the instant case, Yellowstone County has not taken any actions which have reduced the value of Appellants' property.

¶29 Accordingly, we affirm the dismissal of Appellants' action for inverse condemnation. The Appellants' entitlement to relief depends on whether they can prove that the Board acted arbitrarily in denying their zoning amendment.

¶30 Affirmed in part, reversed in part, and remanded.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson concurs and dissents.

¶31 I concur in the Court's discussion and decision as to Issue 1. I dissent from our resolution of Issue 2.

¶32 The evidentiary record in this case reveals that Appellants established that maintenance of the present Residential-9600 zoning classification for their property effectively renders their land valueless. Appellants have shown that their property cannot be developed in accordance with the R-9600 zoning classification because of its location to nearby commercial businesses; because residential development of the property is not compatible with the commercial uses of surrounding properties; and because the county septic system requirements for residential lots preclude development of the property into a sufficient number of lots to make such development economically viable.

¶33 On the other hand, as our discussion and decision on Issue 1 correctly reveal, the County failed to affirmatively set out any legitimate basis justifying its refusal to rezone Appellants' property. On that basis, we properly reverse the trial court's entry of summary judgment in favor of the government, and we remand for further proceedings on this issue.

¶34 In our discussion of Issue 2, however, we affirm the dismissal of Appellants' inverse condemnation claim. Our decision on Issue 2 is inconsistent with our decision on Issue 1. As to Issue 2, we should also reverse and remand.

¶35 "Inverse condemnation" is simply a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted. *United States v. Clarke* (1980), 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373. It is settled law that the application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land. A determination of whether there has been a taking (in the constitutional sense) necessarily requires a weighing of the private and public interests at issue. *Agins v. City of Tiburon* (1980), 447 U.S. 255, 260-61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (citations omitted).

¶36 In the case at bar, Appellants presented evidence that the County's actions have denied

them any economically viable use of their land. Moreover, Appellants contend that the County has failed to demonstrate any legitimate state interests justifying its refusal to rezone Appellants' property so that development of the land can be accomplished in an economically viable manner. In other words, Appellants have presented a *prima facie* case for their inverse condemnation action.

¶37 On the other hand, the government has failed to articulate any facts demonstrating that its refusal to rezone substantially advances legitimate state interests. Our decision on Issue 1 supports this conclusion. Under Issue 1, we have implicitly concluded that, as a result of the government's failure, there is an insufficient basis for weighing the private and public interests involved. Indeed, we state at ¶ 29 that Appellants' entitlement to relief on their inverse condemnation action "depends" on the basis for the County's denial--a basis, unfortunately, which the government has failed, thus far, to reveal.

¶38 In short, our remand on Issue 1 and our affirmance on Issue 2 are at odds with each other. If Appellants prove at trial that they have been denied any economically viable use of their land and if they prove that the County's articulated reasons for its refusal to rezone--reasons which will be articulated as a result of our remand--do not substantially advance state interests, then Appellants will have made their case for inverse condemnation. Since the second prong of the Appellants' case cannot be proven until the County complies with our remand order, a dismissal of Appellants' condemnation action at this point is premature.

¶39 I would reverse the court's dismissal of the Appellants' inverse condemnation action and remand for further proceedings. Any decision on Appellants' inverse condemnation action must necessarily await the County's compliance with our decision on Issue 1. Once the County has articulated the factual basis for not granting Appellants' rezoning request, then the trial court will be in a position to determine whether the stated reasons substantially advance the government's interests.

¶40 I dissent, therefore, from our decision on Issue 2 and would reverse and remand as to that Issue.

/S/ JAMES C. NELSON