
DA 09-0340

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 273

ROBERT HILTEN and LYNN HILTEN,

      Plaintiffs and Appellants,

  v.

ROY BRAGG,

      Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twenty-Second Judicial District, In and For the County of Stillwater, Cause No. DV 08-0025 Honorable Gregory R. Todd, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Daniel G. Gillispie, Gillispie Law Office, PLLC, Billings, Montana

      For Appellee:

          T. Thomas Singer, Jill Gerdrum, Axilon Law Group, PLLC, Billings, Montana

                Submitted on Briefs: October 13, 2010

                        Decided: December 21, 2010

Filed:

                _____
                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Plaintiffs Robert and Lynn Hilten (Hiltens) appeal the order entered by the District Court for the Twenty-Second Judicial District, Stillwater County, granting in part Defendant Roy Bragg's (Bragg) motion for sanctions. We affirm. We restate the issue on appeal as follows:

¶2     ***Did the District Court err in ordering sanctions against plaintiffs, holding them jointly and severally liable for defendant's attorney fees and costs?***

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     The facts tell a rather incredible tale of adult misbehavior. Hiltens and Bragg live in the Eagle Mountain subdivision near Columbus, and are members of the Eagle Mountain Homeowners Association (EMLA). Robert Hilten served on the EMLA's board of directors. In 2002, EMLA or Robert[1] filed a lawsuit against the developer of EMLA regarding an Alltel cellular tower placed in the subdivision (Alltel litigation). Hiltens personally paid a portion of EMLA's attorney fees to pursue the action.

¶4     Bragg moved into the subdivision in 2004 after the Alltel litigation had commenced, and after learning of the suit began expressing his disagreement with EMLA's involvement. Around April 2006, Bragg wrote a letter to EMLA's board of directors noting that his review of EMLA's general ledger revealed no entry for dues paid by Robert for 2005-2006, and that "it would appear our Director at Large was not a valid Association Member during 2005 with voting privileges . . . ." The letter did not name

---

[1] The District Court's order states that "Robert filed" the lawsuit. EMLA was a plaintiff, but the record is unclear about who were additional plaintiffs. However, it is clear that Robert instigated and supported the lawsuit from its inception.

Lynn Hilten, and was an accurate reflection of the ledgers Bragg reviewed. After he learned that Robert had paid his dues, Bragg wrote a follow-up letter to clear the issue. Also in April, Bragg wrote a letter to EMLA members expressing discontent with the action of EMLA's board and the board's practice of holding meetings without notifying the members. The letter did not name Robert or Lynn. Later that month, Bragg again wrote to EMLA members expressing frustration that the Alltel litigation was not being settled. This letter did not name Lynn and stated that Robert had threatened to sue association members if they, the members, attempted to settle the Alltel litigation, and further stated that the "use of fear to control people is alive and well on Eagle Mountain." In December 2006, Hiltens reported that their home was burglarized and indicated to the Stillwater County Sheriff their belief that Bragg was involved.

¶5 By 2007, Alltel Corporation had counter-sued each individual homeowner of EMLA in the litigation and, consequently, Bragg's vocal opposition to the litigation increased. In March 2007, he sent a letter to the attorneys involved in the Alltel litigation. The letter stated that those who initiated the suit were "cowards for implicating unwilling members as parties to this litigation" and that their "glaring conflict of interest should be criminal."

¶6 In April 2007, EMLA conveyed a settlement proposal to Alltel that would have required Alltel to pay EMLA's attorney fees, purchase a piece of land owned by Robert, and relocate the cellular tower to that land. Robert testified that he did not meet with EMLA's attorney with regard to the settlement offer that was proposed. A letter dated

April 19, 2007, from EMLA's attorney to Alltel's attorney set forth EMLA's settlement proposal "[p]ursuant to our settlement conference," and indicated that "present with us during the conference was Bob Hilten, who is president of EMLA," although stating that Robert "has recused himself from participating in the Board's decisions regarding possible settlement of the litigation." Alltel refused the settlement terms. After Robert learned of Alltel's response, he wrote a letter to EMLA relaying his disappointment and stating that: "It turns out that this delicate process was torpedoed by a small group of landowners who are not concerned with others' property rights or covenant violations. Please see the attached letters from Mr. Bragg and Mr. LeGalley."

¶7     On June 11, 2007, around the time the settlement proposal was refused, Lynn reported that someone had shot at her while she was driving on the subdivision road in front of Bragg's property. She reported to law enforcement that she thought someone wanted to kill her because of her involvement in the Alltel litigation. She specifically named Bragg and EMLA member David Legally as the individuals that tried to kill her. Hiltens also complained to police that no charges had been brought against Bragg and Legally regarding the previously reported burglary of their home in December 2006. In September 2007, the Stillwater County Sheriff's Department, after having investigated the alleged shooting, wrote to Hiltens' lawyer that there was no evidence to conclude that a crime had been committed. Shortly thereafter, Hiltens wrote to the Montana Attorney General and United States Senator Jon Tester indicating discontent with the lack of charges against Bragg. In November 2007, the Attorney General's office responded that

4

the Stillwater County Attorney's office had not abused its discretion by declining to file criminal charges for the alleged shooting in June 2007, agreeing that there was not sufficient evidence to charge a crime. As the file reviewed by the Attorney General's office did not contain information from Hiltens' personal investigators, the letter urged Hiltens to provide authorities with that information. Eventually, Hiltens filed an action for release of criminal justice information regarding the alleged shooting, in which Bragg was allowed to intervene, and a ruling was issued that Hiltens and Bragg would receive redacted Stillwater County investigative reports concerning the incident.

¶8     On September 29, 2007, EMLA held a public meeting. It was contentious, with board members trading insults with EMLA members over the Alltel litigation. Robert made an untrue statement that EMLA had not requested payment of its attorney fees as part of the settlement proposal it made to Alltel, but later he wrote to EMLA members admitting the mistake. Robert also stated that Bragg had threatened to sue EMLA if it did not pursue the Alltel litigation. While Bragg had made comments indicating that he might pursue legal action concerning a number of covenant violations in the subdivision, Bragg had been vocally opposed to the pursuit of the Alltel litigation. Thus, the following transpired:

     [Bragg]: Bob, you are a pathological liar. I am so tired of your lies.

     [Robert]: I am so tired of your lies, sir. I am so tired of your lies.

About a month after the meeting, in response to a prior e-mail about a false burglar alarm sounding in the subdivision, Bragg sent an e-mail to EMLA members stating "[a]lleged

5

burglaries, false alarms, residents allegedly nearly run over, alleged attempted murders, alleged prowlers, all of this alleged on Eagle Mountain," concluding with "[c]ome on people, wake up and seek the truth!"

¶9     Somewhere around the end of 2007 or beginning of 2008, Hiltens met with attorney Penelope Strong regarding a possible lawsuit against Bragg, and on March 18, 2008, Hiltens filed the suit herein, claiming Bragg defamed them by libel through five written statements and by slander through Bragg's verbal statement that Robert was a "pathological liar." The five written statements were statements made in the three letters Bragg wrote around April 2006, the letter in March 2007 Bragg wrote to the attorneys involved in the Alltel litigation, and the e-mail Bragg sent in October 2007. Hiltens prayed for judgment against Bragg for $500,000 plus special and punitive damages. Though the complaint referenced the alleged burglary and alleged shooting, Strong, Hiltens' attorney, refused to add assault and battery claims to the case. None of the six statements named Lynn, while a few expressly named Robert. Hiltens offered no evidence of actual damages in discovery, but denied a request for admission that "the actions of the defendant alleged in the complaint have not caused an [sic] financial or monetary damage to you."

¶10     In response to discovery requests, Hiltens produced audio files of EMLA meetings which Bragg requested. Hiltens served discovery on Bragg, primarily seeking information concerning the Alltel litigation and the alleged shooting incident. One request for production asked:

6

Please produce all correspondence between yourself and any members of EMLA, including emails, for the past five years, that concerns Plaintiffs, or [EMLA developer] John Sherwood, EMLA, the EMLA lawsuit against Sherwood, Alltel, et. al, the incident of June 11, 2007 when Plaintiff Lynn Hilten was shot at . . . and this law suit.

Another interrogatory stated: "Please describe your activities on June 11, 2007, with specific detail, from 7 am to 12 pm that evening, and state whom you saw . . . and state in detail, hour by hour, what you were doing on that date." Lynn testified they had requested information about the alleged shooting in the defamation action because they had wanted to bring a civil assault and battery case, but Strong advised them they did not have enough evidence to proceed with it at that time. She further testified that they had always planned on bringing a civil assault and battery claim, and that if they learned information about the alleged shooting in this case, "we weren't going to complain . . . ."

¶11    In the course of preparing for a summary judgment motion, Bragg discovered that the audio files Hiltens had produced in discovery were incomplete. The audio file of the September 29, 2007 EMLA meeting was missing the segment where Robert stated that he had not requested attorney fees as part of the Alltel settlement proposal. Bragg had an alternate copy of that particular meeting, and by comparing the two recordings could determine what pieces were missing. It was later determined that the files produced by Hiltens had been altered prior to delivery to Bragg.

¶12    On February 5, 2009, Bragg moved for summary judgment on all of Hiltens' claims on the grounds that none of the statements were defamatory, that they were privileged, made without malice, and constitutionally protected. Concerning the slander

claim for the "pathological liar" statement, he argued that the statement was not defamatory because it was true. In opposition to Bragg's summary judgment motion, Lynn submitted an affidavit to the court which stated that "[Bragg] called my husband a 'pathological liar' at an association meeting that Bob was presiding over," and then falsely stated that "I personally witnessed this incident." In fact, Lynn was not present at the meeting. Citing numerous grounds, the District Court granted Bragg's motion for summary judgment on all of Hiltens' claims on May 11, 2009. While the summary judgment motion was pending, the ongoing Alltel litigation was dismissed by stipulation of the parties with all parties responsible for their respective attorney fees.

¶13 One week after the summary judgment order was issued, on May 18, 2009, Bragg filed a motion for sanctions pursuant to M. R. Civ. P. 11 and 37(c)-(d) against Hiltens and Strong, in the form of his reasonable attorney fees. While this motion was pending, in June 2009, Lynn filed a separate action against Bragg and David Legally for civil assault and battery based on the alleged June 2007 shooting.

¶14 On December 18, 2009, the District Court held a hearing on the motion for sanctions, and on March 26, 2010, issued findings of fact, conclusions of law, and an order granting Bragg's motion for sanctions, in part. The District Court found that the driving force of the suit was Hiltens' animus towards Bragg, and that it was filed in part for the purpose of silencing Bragg's opposition to the Alltel litigation, generating information concerning that suit and the alleged shooting, and to harass Bragg. The court concluded that Hiltens violated Rules 11, 37(c)-(d), and that their conduct was also

8

sanctionable under Rule 26(g). It further determined that Hiltens' violations of the Rules and bad faith conduct were sanctionable, while Strong's violations were not, and ordered that Hiltens were jointly and severally liable for payment of Bragg's reasonable attorney fees, which it approved in the amount of $46,182.92.

¶15 On June 8, 2009, while the motion for sanctions was pending, Hiltens filed a notice of appeal to this Court, challenging the "final judgment or order entered in such action on the 5th day of June, 2009." On July 9, 2009, Hiltens filed a motion to stay their notice of appeal until final judgment was entered in the matter. On July 13, 2009, we issued an order indicating that the notice of appeal did not deprive the District Court of jurisdiction to enter final judgment, and that "the notice of appeal shall be treated as filed on the day of entry of final judgment in that cause." After the District Court issued the order for sanctions on March 26, 2010, it entered judgment in the matter on March 31, 2010, and subsequently stayed the judgment pending the appeal. Hiltens appeal the order imposing sanctions.

## STANDARD OF REVIEW

¶16 We generally review a district court's imposition of sanctions for an abuse of discretion. *See In re Marriage of Lundstrom*, 2009 MT 400, ¶¶ 15-16, 353 Mont. 436, 221 P.3d 1178 (citations omitted). We have explained that in reviewing a district court's order for sanctions under M. R. Civ. P. 11, we review the determination that a pleading, motion or other paper violates Rule 11 de novo, the factual findings underlying that conclusion to ascertain whether those findings are clearly erroneous, and the choice of

9

sanction for an abuse of discretion. *Byrum v. Andren*, 2007 MT 107, ¶ 19, 337 Mont. 167, 159 P.3d 1062.

¶17 On the issue of sanctions "[w]e afford district courts wide latitude to determine whether the factual circumstances of a particular case warrant imposition of sanctions," recognizing that the district court has " 'tasted the flavor of the litigation and is in the best position to make these kinds of determinations.' " *Textana, Inc. v. Klabzuba Oil & Gas*, 2009 MT 401, ¶ 83, 353 Mont. 442, 222 P.3d 580 (quoting *D'Agostino v. Swanson*, 240 Mont. 435, 446, 784 P.2d 919, 926 (1990)).

## DISCUSSION

¶18 As a preliminary matter, Bragg argues that this Court should not address the merits of Hiltens' appeal because they did not properly preserve their right to appeal the sanctions order and did not request relief from the "only conceivable order which could have been referenced in their notice of appeal," i.e., the District Court's summary judgment order. Hiltens respond that their notice of appeal clearly references the "final judgment or order" of the District Court, which they propose was the order granting the motion for sanctions and, because they were not ordered to file a supplemental notice of appeal under M. R. App. P. 4(4)(e), their appeal is not subject to dismissal under Rule 4.

¶19 Rule 4(4)(a) requires that a notice of appeal "designate the final judgment or order or part thereof from which the appeal is taken." Regarding prematurely filed notice of appeals, Rule 4 further provides that:

> A notice of appeal filed after the announcement of a decision or order, but before either entry of the written judgment or order from which the appeal

is taken . . . shall be treated as filed on the day of such entry. The district court is not deprived of jurisdiction to enter the written judgment or order by the premature filing of a notice of appeal.

M. R. App. P. 4(5)(a)(ii).

¶20 Hiltens' notice of appeal was flawed in both its timing and its reference to a non-existent June 5, 2009 order, which Hiltens concede was a clerical error. However, shortly after filing their appeal, Hiltens requested and procured a stay from this Court on their notice of appeal and an order that the notice of appeal would be treated as filed on the date of final judgment. Hiltens contest the District Court's order for sanctions, rather than the summary judgment order to which the erroneous reference in the notice of appeal most likely referred. Yet, despite these flaws, our rules provide that premature notice of appeals can include later filed judgments. *See* M. R. App. P. 4(5)(a)(ii). Though parties are advised to be conscientious in filing their notice of appeals, in light of the above rules and our earlier order, we conclude that Hiltens' appeal does not warrant a summary dismissal.

¶21 ***Did the District Court err in ordering sanctions against plaintiffs, holding them jointly and severally liable for defendant's attorney fees and costs?***

¶22 Hiltens argue their lawsuit was not sanctionable, citing *Zaldivar v. City of L.A.*, 780 F.2d 823, 832 (9th Cir. 1986), because it was arguably supported by existing law, or a good faith argument for extension of the law. They posit that a statement that a person is a "pathological liar" can give rise to a cause of action for defamation under Montana law, and that the District Court erred in concluding that their argument regarding the law governing official proceeding privileges was frivolous, because the law is not settled on

11

that issue. They further argue that sanctions are not warranted because the court essentially made a finding that Robert was indeed a pathological liar, which was clearly erroneous, that Lynn's conduct regarding her affidavit was not sanctionable because she was not ultimately responsible for its contents, and that sanctions under M. R. Civ. P. 37 and 26 were not warranted because they were not timely. Bragg counters by asking that we affirm the District Court because Hiltens do not challenge most of the reasons for which the District Court imposed sanctions, the court did not reach certain conclusions asserted by Hiltens, the challenged findings were supported by the record, and that the court acted within its discretion in issuing sanctions.

¶23    M. R. Civ. P. 11 provides that:

> Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. . . . The signature of an attorney or party constitutes a certificate by the signer . . . that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry *it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and* that *it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.* . . . If a pleading, motion, or other paper is signed in violation of this rule, the court . . . *shall impose* upon the person who signed it, *a represented party*, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. [Emphasis added.]

"The purpose of Rule 11 is to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.' " *Byrum*, ¶ 32 (quoting *Brandt v. Sande*, 2000 MT 98, ¶ 35, 299 Mont. 256, 1 P.3d 929).

12

Interpreting the clear language of the rule, we have stated that "sanctions under Rule 11 shall be imposed if a pleading is frivolous or filed for an improper purpose." *Brandt*, ¶ 34; *see also D'Agostino*, 240 Mont. at 445, 784 P.2d at 925 (explaining that "[Rule 11] provides two grounds for sanctions" deriving from the "frivolousness clause" and the "improper purpose clause"). Once a district court has determined that "a case has no merit or has been commenced for an improper purpose, the mandatory language of the rule requires the court to impose sanctions on the offending party, his counsel or both." *D'Agostino*, 240 Mont. at 446, 784 P.2d at 926 (citations omitted).

¶24 Pursuant to M. R. Civ. P. 26(g), sanctions may be imposed when discovery requests of a party are not designed to elicit relevant information, but rather to harass and embarrass. *See In re Estate of Miles v. Miles*, 2000 MT 41, ¶¶ 53-54, 298 Mont. 312, 994 P.2d 1139. Rule 26(g), patterned in language similar to Rule 11, provides that:

> Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. . . . The signature of the attorney or party constitutes a certification . . . that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) *not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;* and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation. . . .
> If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, *shall impose* upon the person who made the certification, *the party on whose behalf the request, response, or objection is made,* or both, an appropriate sanction, which may include an

order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee. [Emphasis added.]

Rule 37(c) provides for sanctions in discovery abuse situations when "a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36," providing further that:

> [I]f the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party *may apply to the court for an order requiring the other party*, the other party's attorney or both *to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees*. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit. [Emphasis added.]

*See e.g. Neal v. Nelson*, 2008 MT 426, ¶¶ 40-41, 347 Mont. 431, 198 P.3d 819 (concluding an award of reasonable attorney fees resulting from defendant's refusal to admit plaintiff was injured which required plaintiff to prove causation at trial was within the court's discretion under Rule 37(c)). Rule 37(d) also authorizes discovery sanctions as follows:

> If a party . . . fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just . . . . In lieu of any order or in addition thereto, the court *shall require the party failing to act* or the attorney advising that party or both *to pay the reasonable expenses, including attorney's fees, caused by the failure*, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. [Emphasis added.]

14

Under Rule 37(d), "a complete failure to answer interrogatories or otherwise respond to discovery requests is not required before sanctions are allowed . . . ." *Eisenmenger by Eisenmenger v. Ethicon, Inc.*, 264 Mont. 393, 402, 871 P.2d 1313, 1318 (1994).

¶25 The District Court concluded that Hiltens violated Rule 11 in bringing their defamation claims for improper purposes, in bringing the claim based on Bragg's letter regarding the payment of Robert's dues because it was frivolous, i.e., made without any basis in law or fact and with no reasonable argument for the extension of the law, in bringing the "pathological liar" claim both "because Hiltens knew it was not an untrue statement" and because it was frivolous, and that Lynn violated the rule in submitting her false affidavit to the court. The District Court concluded that Hiltens also violated Rule 37(c) in refusing to admit that they did not suffer monetary damages due to the defamatory statements, and had violated Rule 37(d) when they produced altered audio files in discovery. Finally, acting on its own motion, the District Court determined that Hiltens' conduct in causing to be served large amounts of irrelevant discovery intended to elicit information regarding future claims and the Alltel litigation was sanctionable under Rule 26(g).

¶26 Considering the plethora of rules Hiltens were found to have violated based on many unchallenged factual findings, their arguments against Rule 11 sanctions cannot withstand the magnitude of their misconduct. On appeal, they primarily challenge the District Court's Rule 11 findings and conclusions with regard to their slander claim. However, the District Court concluded that Hiltens violated Rule 11 on several other

grounds which they do not properly challenge, including bringing all of their claims for improper purposes and bringing a frivolous claim regarding the EMLA ledger. Further, the court found that both Robert and Lynn's testimony at the sanctions hearing was not credible, thus defeating Hiltens' nebulous challenge to the court's determinations regarding Lynn's misconduct in the false affidavit. *See Kulstad v. Maniaci*, 2009 MT 326, ¶ 90, 352 Mont. 513, 220 P.3d 595 ("A district court sits in the best position to observe and judge witness credibility and we will not second guess its determination regarding the strength and weight of conflicting testimony."). Sanctions under Rule 11 are appropriate for bringing claims for improper purposes, *see Brandt*, ¶ 34, and Hiltens brought their suit for many improper purposes, including their animus towards Bragg, to silence Bragg's opposition to the Alltel litigation, to harass Bragg, to gain or generate information with regard to the Alltel litigation and the alleged shooting, and generally "in furtherance of their vendetta against Bragg." Upon these findings, the District Court properly and indeed was required by the mandatory wording of Rule 11 to sanction the parties. *See D'Agostino*, 240 Mont. at 446, 784 P.2d at 926. We need not address other arguments Hiltens have made on the propriety of Rule 11 sanctions, as there was more than a sufficient basis to support the District Court's conclusion that their misconduct warranted the imposition of Rule 11 sanctions.

¶27 Similarly, regarding the discovery rules, Hiltens argue that sanctions under Rules 37 and 26 were not warranted because they were not sought timely. Bragg did not learn of Hiltens' discovery abuses until preparing the summary judgment motion filed in

16

February 2009, and moved for sanctions only a week after summary judgment was granted in May 2009. As Hiltens' arguments have not disturbed the underlying findings regarding the discovery abuse, and as the bad faith conduct was brought to the parties' attention within a relatively short time after discovery, we conclude that the court did not err by not denying the sanctions as untimely sought. Considering that this litigation involved altered computer files, a failure to admit Hiltens had sustained no monetary damages, inappropriate discovery requests, and overall bad faith, we further conclude that the District Court properly imposed sanctions under the discovery rules.

¶28 Concerning the amount and apportionment of sanctions, Hiltens argue that the sanction award for the discovery abuses exceeds the allowable sanction for violations of Rules 26 and 37, they are not the proper parties to bear the sanctions and are being held to a higher standard of legal knowledge than their attorney Strong, and that the sanctions were unreasonable given the lack of notice to Hiltens and absence of evidence that Bragg sought to mitigate his damages. These assertions are not supported with citation to Montana authority.

¶29 Hiltens ignore the reality that attorney fees in excess of $46,000 resulted not merely from their discovery abuses, significant in their own right, but also for a litany of other misconduct, including bringing the suit for improper purposes and for submitting a false affidavit to the court. Regarding Strong's testimony and culpability, the court determined that her violations of the Rules were problematic, but not sanctionable and noted the distinctions between Strong's actions and those of Hiltens in observing that

"Strong refused to pursue a civil assault and battery claim and Strong did not alter any audio tape produced in discovery" and that it was "unbelievable that Strong would specifically tell Lynn to leave in an untrue statement in Lynn's affidavit," as Lynn's testimony at the hearing implied. The court further concluded that "to attribute Strong with animus of Rule 11 harassment, unnecessary delay or needless increase of litigation is difficult," while "[a]ttributing Hiltens with such motives is not difficult." No evidence indicates Bragg unnecessarily incurred legal fees. Upon our review of the record, we conclude that the District Court did not abuse its discretion in ordering sanctions against Hiltens jointly and severally in the amount of $46,182.92, and not imposing sanctions upon Strong.

¶30 Finally, Bragg asks that we award sanctions on appeal under M. R. App. P. 19(5) which allows for an award of sanctions "to the prevailing party in an appeal . . . determined to be frivolous, vexatious, filed for purposes of harassment or delay, or taken without substantial or reasonable grounds." In evaluating the issue of sanctions on appeal "we generally assess whether the arguments were made in good faith." *Wolf's Interstate Leasing & Sales, L.L.C. v. Banks*, 2009 MT 354, ¶ 13, 353 Mont. 189, 219 P.3d 1260 (citing *Sorenson v. Massey-Ferguson, Inc.*, 279 Mont. 527, 531, 927 P.2d 1030, 1033 (1996)). Although we affirm the District Court's order of sanctions, upon consideration of that award and our assessment of Hiltens' arguments on appeal, we cannot conclude that their appeal was not taken in good faith, and thus we award no further sanctions on appeal.

18

¶31     Affirmed.


                                        /S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER